UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 25-1922

KALSHIEX LLC,
*Plaintiff-Appellee,*

v.

MARY JO FLAHERTY AND MATTHEW J. PLATKIN
*Defendant-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CIVIL ACTION NO. 1:25-CV-02152

## <u>CERTIFICATION OF ACCURACY</u>

I, Liza B. Fleming, am Liaison Counsel with regard to the preparation and filing of the transcript of the oral argument held on September 10, 2025, in the above-captioned matter. I certify that the transcript attached hereto is accurate, with all counsel having had an opportunity to review and to make corrections prior to this filing.

Dated: September 24, 2025

*/s/ Liza B. Fleming*
Liza B. Fleming
*Deputy Attorney General*

MATTHEW J. PLATKIN
*Attorney General of New Jersey*
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 112
Trenton, New Jersey 08625-0112
Attorneys for Appellants

Page 1

1

2   UNITED STATES THIRD CIRCUIT

3   COURT OF APPEALS NEW YORK

4   - - - - - - - - - - - - - - - - - - -x

5

6   In the Matter of:

7   KALSHIEX, LLC,                        Main Case No.

8           APPELLEE                         25-1922

9   V.

10  MARY JO FLAHERTY, ET AL.,

11          APPELLANTS

12  - - - - - - - - - - - - - - - - - - -x

13

14                  United States Third Circuit Court of Appeals

15

16

17                  September 10, 2025

18                  9:30 AM

19

20  B E F O R E:

21  HON. CHIEF JUDGE MICHAEL A. CHAGARES

22  CIRCUIT JUDGE DAVID J. PORTER

23  CIRCUIT JUDGE JANE RICHARDS ROTH

24  U.S. THIRD CIRCUIT COURT OF APPEALS

25

Page 2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18    Transcribed by:  Becky Kleiner

19    eScribers, LLC

20    7227 North 16th Street, Suite #207

21    Phoenix, AZ 85020

22    (800) 257-0885

23    operations@escribers.net

24

25

Page 3

```
 1
 2   A P P E A R A N C E S:
 3   MILBANK LLP
 4        Attorneys for Appellee
 5        1101 New York Ave. NW
 6        Washington, DC 20005
 7
 8   BY:   WILLIAM E. HAVEMANN, ESQ
 9
10
11   OFFICE OF ATTORNEY GENERAL OF NEW JERSEY
12        Attorneys for Attorney for Appellant
13        25 Market Street
14        Richard J. Hughes Justice Complex
15        Trenton, NJ 08611
16
17   BY:   STEPHEN EHRLICH, ESQ
18
19
20
21
22
23
24
25
```

1          P R O C E E D I N G S

2          JUDGE CHAGARES:  And this case is Kalshiex (sic).  I

3   may have pronounced -- mispronounced that, versus Flaherty,

4   Number 25-1922.  So we'll hear from appellant's counsel, and

5   you may proceed.

6          MR. EHRLICH:  Thank you, Your Honor.  Stephen Ehrlich,

7   on behalf of appellants, I'd like to reserve three minutes for

8   rebuttal.

9          JUDGE CHAGARES:  That will be granted.

10          MR. EHRLICH:  Thank you.  For three --

11          JUDGE CHAGARES:  How do you pronounce the -- the --

12   how do you pronounce your client's name here?

13          MR. EHRLICH:  For appellants, we're from the State,

14   Your Honor.

15          JUDGE CHAGARES:  Oh, shoot.  So sorry.  Yes, yes,

16   yeah.  You must know by now how the other side pronounces their

17   name.

18          MR. EHRLICH:  I actually don't.  I thought it was

19   Kalshi.

20          MR. HAVEMANN:  That's right.

21          JUDGE CHAGARES:  Kalshi.

22          MR. EHRLICH:  Kalshi.

23          JUDGE CHAGARES:  All right.  Good.  Okay.  Good.

24   Sorry.  Kalshi X, right?  All right.  Do you go with just

25   Kalshi, or do you go with the whole thing with the X at the

Page 5

1    end?

2         MR. HAVEMANN:  Kalshi [cal-she] is great.

3         JUDGE CHAGARES:  All right.  Will do.  Thank you.

4    Great.

5         MR. EHRLICH:  Easier to say.

6         JUDGE CHAGARES:  Okay.  All right.  We'll do.  Thank

7    you.  I'm so sorry.  You may proceed.

8         MR. EHRLICH:  Thank you, Your Honor.  For three

9    independently sufficient reasons, any one of which is enough to

10   rule for the State, this Court should reverse the decision

11   below.  First, what Kalshi offers is not a swap, so it falls

12   outside the Commodity Exchange Act in the first place.

13        Second, there can't be preemption here because

14   Congress specifically declined to preempt the type of state

15   gambling laws at issue here while preempting others, and

16   Congress has time and again affirmed the state's regulation of

17   gambling within their borders, a choice that the Supreme

18   Court's decision in Wyeth makes clear is incompatible with

19   preemption.

20        And third, the standard preemption analysis express,

21   field, and conflict also do not get Kalshi to preemption.  For

22   any or all of those reasons this Court should reverse.

23        I'd like to start with the Commodity Exchange Act's

24   definition of swaps, and quite simply, Your Honor, the Congress

25   did not intend a massive sea change in gambling regulation when

Page 6

1   it inserted the word swap into the Commodities Exchange Act in

2   2010 as part of the Dodd-Frank reforms.  The reason this is

3   such a massive sea change is because swaps have to be traded on

4   CFTC regulated exchanges on a designated contract market, and

5   it's, in fact, a federal crime to trade them outside of those

6   scenarios, and so what we have here is a definition by Kalshi

7   that would essentially make all casinos and sportsbooks

8   currently federal felons.  We think that's certainly not what

9   Congress was trying to do.  We don't think that's what the

10  Supreme Court in Murphy was envisioning when they struck down

11  PASPA and said, we're leaving this for the states to regulate.

12  They didn't mean we're leaving it to the CFTC, and that was

13  only seven years ago.  They expected this to be something that

14  the states regulate, and I think what the -- part of the issue

15  here --

16          JUDGE CHAGARES:  Let's jump into this now.

17          MR. EHRLICH:  Uh-huh.

18          JUDGE CHAGARES:  We're -- because we don't have all

19  that much time.  So I -- it seems that that the definition of

20  swaps is actually quite broad, and I understand you point out

21  some things that seem undesirable to your side, but I mean, for

22  instance, I noticed in your brief, you -- I don't know if

23  there's a suggestion on a limitation, but you suggest something

24  should be inherently financial, economic, whatever, but that's

25  not in the statute.  Are we obliged to, to apply what the

Page 7

1   elected branches have gotten us here, and to the extent any fix

2   is necessary, and we're not saying it is, isn't that for the

3   elected branches to deal with and not us?

4           MR. EHRLICH:  Yeah.  So I think a few responses to

5   that, Your Honor.  I think we are both looking at the text.  So

6   on our side we're looking at the words especially associated

7   with and so associated with -- joined or connected to.  We give

8   the example in our brief, you know, lung cancer is associated

9   with smoking.

10          JUDGE CHAGARES:  Well it's not only that, it's

11  associated with a potential financial, economic or commercial

12  consequence.  I mean that that's -- that's pretty broad.

13          MR. EHRLICH:  Yeah, I agree it's broad, and it's

14  because Congress was trying to sweep in various things as part

15  of the Dodd-Frank reforms they couldn't foresee exactly what

16  would become a swap, but it's not unlimited.  I think this is

17  similar to the sort of --

18          JUDGE CHAGARES:  Well, that's true.  Maybe they didn't

19  foresee this.  It's a very interesting business model, but --

20  but and maybe they didn't foresee it, but again, isn't that for

21  the elected branches to deal with?

22          MR. EHRLICH:  Well I -- it is, but I think what

23  they've done here is not what Kalshi has said they've done, and

24  the reason we know that we have the associated with language,

25  as I pointed out, you know, in our example, in our brief.  Lung

Page 8

1  cancer is associated with smoking.  Things can rise and fall

2  together.

3          JUDGE CHAGARES:  Right.

4          MR. EHRLICH:  And we have the context of the statute

5  itself.  So the other clauses, the other subclauses were

6  focused on Subclause 2.  That's mainly what the parties have

7  been arguing about.

8          JUDGE CHAGARES:  Yes.

9          MR. EHRLICH:  But the other subclauses are all about

10  financial -- link to a financial instrument or measure, and

11  that's what we would say applies here too, if something is

12  associated with something, when it has a link to the financial

13  instrument or measure, and so we used inherently financial as

14  is sort of the shorthand, but that's really --

15          JUDGE CHAGARES:  Oh, that's limiting though.

16          MR. EHRLICH:  Well, it is limiting, and I think the

17  reason it's limiting is because we have the rare case where

18  three critical statutory interpretation rules cut our way,

19  which is we have a clear statement rule that Congress doesn't

20  lightly change the power between federal and state government.

21  This is something that state governments have regulated

22  forever, and I would point the Court to the states' amicus

23  brief from a broad coalition of states who goes in depth on

24  that.  We have the major questions doctrine, which is that, you

25  know, Congress doesn't lightly give agencies vast economic and

Page 9

1   political power without a clear statement, and we have the fact

2   that Congress doesn't lightly repeal its own statutes, and

3   Congress has time and time again, every time it passed a

4   federal gambling law accommodated and accepted state law, and

5   that's what we think they were doing here.  They didn't do

6   anything to upend that there.  We require a clear statement for

7   Congress to do that.  I mean, this would -- the Wire Act's

8   prohibition on interstate gambling wouldn't make any sense if

9   everything was legal through the CFTC.

10          At the time this was enacted in 2010, PASPA was making

11  sports betting largely illegal.  That apparently was for

12  nothing.  The Supreme Court's decision in Murphy apparently did

13  nothing because everything was legal through the CFTC.  So we

14  have those three clear statements.

15          JUDGE PORTER:  Why do you -- why do you say nothing

16  and everything?  I mean, we're talking about transactions only

17  on the DCM's, right?  Not all sports gambling.

18          MR. EHRLICH:  Well, we are, but the problem is with

19  the structure is the Commodity Exchange Act prohibits trading

20  of swaps specifically.  We're talking about swaps that the

21  parties are arguing about.  Those are not allowed to be traded

22  off DCM.  It's a federal crime to be traded outside designated

23  exchange markets, and so as we say in our briefs, if they're

24  funneled essentially to the CFTC.  So there can't be any -- if

25  Kalshi is right -- and their definition we would say is

1   limitless, but if they're right about this, then everything

2   that counts as a swap and in our view, is pretty much

3   everything, would have to be regulated by the CFTC.  We don't

4   think that's what Congress is doing.  We see this in their

5   examples they use.  They talk about the Eagles winning the

6   Super Bowl and things like that, but when you look at the

7   article, the reason that generated revenue is because they held

8   a parade and things like that, and same thing with the World

9   Cup.  There's greater international appeal.  We think that's

10   too attenuated.  This is why Congress meant to link it to a

11   financial measurement or -- or instrument, and that's what they

12   were doing here, and that's what the clear statement rules are

13   pointing to.

14          JUDGE PORTER:  There's no examples of sports betting

15   that are not swaps?

16          MR. EHRLICH:  Well, I -- we give some examples that

17   could be game, like, essentially gaming adjacent that are --

18   that could be swaps and therefore would trigger the special

19   rule.  So things around gaming.  So the revenue of the

20   Pittsburgh Steelers, for example, we think is linked to a

21   financial measurement, the revenue, and so it would be a swap,

22   it would fall into the special rule and up to the CFTC to

23   exclude it, but things about the sports game itself, probably

24   not.  We can't envision anything that would be a swap in that

25   scenario.

Page 11

1          And I think this -- the, as I said, the clear

2     statement rules that I was discussing all point that way, and

3     they feed into our preemption arguments as well.  We talk about

4     first the presumption against preemption.  This is again

5     something that states have long regulated.  It's within our

6     police powers.  We have great controls on all of these things

7     around gambling.  It's a strongly regulated environment, and

8     again, we've regulated this for hundreds of years.

9          On top of that, we have the congressional acceptance

10    of state gambling laws in nearly every decade since the 1940s.

11    Congress has repeatedly accepted and incorporated state

12    gambling laws into its statutes, and the Supreme Court tells us

13    in Wyeth, when that happens, when Congress is aware of a state

14    scheme, aware of state laws, and nonetheless does not do

15    anything with it, that's a pretty strong indication that

16    there's no preemption, and that's exactly what we have here.

17         What the Supreme Court also says in Wyeth, by the way,

18    is Congress surely would have enacted an express preemption

19    provision if this is something they wanted to do, and they did

20    that here, but not for the transactions that are at issue in

21    our case, not for sports outcome contracts, and certainly not

22    in a way that would allow the federal government to make all

23    casinos in New Jersey felons.  So we have them enacting an

24    express preemption provisions for certain gaming laws, not the

25    ones at issue here.  The Supreme Court tells us in Cipollone

Page 12

1    that that's a very strong indication that there should be no

2    preemption, and then on top of that, we have the savings

3    clauses that we talk about in our briefs, that they're not

4    divesting federal and state courts of jurisdiction over the

5    usual claims in those courts.

6         And lastly, we have the special rule which

7    incorporates state law in one of the things that the CFTC looks

8    at when they're excluding things, and so when you pile all of

9    those things on top of each other, especially Congress's

10   explicit preemption of certain things, certain state gaming

11   laws, but not the gaming laws at issue here, and the fact that

12   they've repeatedly accepted state gambling laws.  There just

13   cannot possibly be a way where Congress preempted especially

14   the field, but really, any preemption in this area, and then --

15        JUDGE CHAGARES:  There's a lot of discussion in the

16   briefs as well about conflict preemption, as well.

17        MR. EHRLICH:  Yes.  And we agree -- excuse me, Your

18   Honor.

19        JUDGE CHAGARES:  Sure.

20        MR. EHRLICH:  We agree that conflict preemption is

21   something that can apply in the appropriate case, and it just

22   doesn't apply here because federal law is prohibiting the same

23   thing as -- as state law, and in those circumstances, there's

24   almost never going to be conflict preemption.  I mean, Kalshi

25   itself admits, and we quote this in page forty-nine of our

Page 13

1    opening briefs, their D.C. Circuit brief, where they say

2    Congress did not want sports betting to be conducted on

3    derivative markets.  We agree, and Congress said that

4    essentially in the special rule, it gave some discretion to the

5    CFTC.  The CFTC has an implementing regulation, it says the

6    company shall not list.  So what they're doing is illegal under

7    federal law.  It's illegal under our state law, and there's not

8    going to be a conflict in that circumstance.  I will say they

9    can do what they want as long as they get a license in New

10   Jersey, that's all they have to do is comply with our New

11   Jersey --

12         JUDGE CHAGARES:  Well, but there are other conflicts,

13   too.  I mean, you have to be over 18 in New Jersey.  It can't

14   deal with collegiate betting in any -- in any way and other

15   things too, but go ahead.

16         MR. EHRLICH:  Certain collegiate games.  But, yes.

17         JUDGE CHAGARES:  It's in the Constitution.

18         MR. EHRLICH:  Correct.  Exactly, Your Honor, and they

19   have to comply with those things for New Jersey residents, but

20   again, this is something that companies deal with all the time

21   is parallel -- parallel federal and state regulations.  We

22   quote examples at page 52 of our brief, but antitrust laws,

23   security laws, you know, anti-discrimination laws, companies

24   deal with parallel regulations all the time, and we don't see

25   those things that Your Honor pointed out as, as conflicts here.

Page 14

1    Again, they shouldn't be trading these on DCMS at all, and so

2    the fact that they're allowed to do it, subject to some

3    restrictions under our law, doesn't create a conflict here, and

4    so for that reason, we would say there's certainly no conflict.

5    I think the parties agree that conflict preemption could apply.

6    I think a lot of the arguments revolve around field preemption.

7    It's just that in this case, in the sports gambling case where

8    Congress has repeatedly --

9              JUDGE CHAGARES:  What is a field anyway, if it's field

10   preemption?

11             MR. EHRLICH:  Sorry, Your Honor?

12             JUDGE CHAGARES:  What is the field?

13             MR. EHRLICH:  Well, I think you'd have to ask Kalshi

14   that.  I mean, we don't think there is a field.  I think they

15   would say all trading on designated contracts markets, which

16   is -- I think we would say clearly not true.  I think the

17   Seventh Circuit in the American Agriculture case --

18             JUDGE CHAGARES:  Right, right.

19             MR. ERLICH:  -- that both parties cite, says not field

20   preemption, so I don't know the answer to that, but that's why

21   we say there's no field preemption.

22             JUDGE CHAGARES:  All right.  Do you have anything,

23   Judge Porter?

24             JUDGE PORTER:  Well, just given the posture of the

25   case on the preliminary injunction on the first prong, you

Page 15

1    know, they don't have to show that they're likely to win,

2    right?  Just that they -- just that they have a significantly

3    better than negligible argument, are you saying that the -- the

4    position is not significantly better than negligible?

5         MR. EHRLICH:  Well, I guess I would say two things.  I

6    don't think we think that's the standard, and we quote a

7    contrary case in our briefs for likelihood of success, but I

8    also don't think it matters.  I mean, it's a -- it's a pure

9    question of law in our view.  Here, which would be de novo

10   regardless, and on a de novo review, the idea that Congress

11   inserted swaps to -- to put all gambling, make all casinos

12   felons and then preempted all state law would just not work,

13   for all the reasons that we've been talking about, and so I

14   think under any standard you would apply, it just, it wouldn't

15   meet it.

16        JUDGE CHAGARES:  Great.  Judge Roth, do you have

17   anything else?

18        JUDGE ROTH:  I have nothing further.  Thank you.

19        JUDGE CHAGARES:  Okay.  Great.  Thank you.  We'll get

20   you on rebuttal and we'll hear from the appellee now.

21        You may proceed.

22        MR. HAVEMANN:  Good morning, Your Honors, may it

23   please the Court.  Will Havemann, on behalf of Kalshi.  The

24   District Court correctly held that Congress's decision to vest

25   the CFTC with, remember the statutory language, exclusive

Page 16

1   jurisdiction over trading on designated contract markets

2   clearly preempts Defendants' efforts to regulate trading on

3   Kalshi, which is a designated contract market.  We think this

4   case can begin and end for some of the reasons I think both

5   Judge Porter and Chief Judge Chagares, you're noting with

6   opposing counsel, can begin and end with the plain statutory

7   text.

8          And if I may begin where my colleague began, which is

9   on the definition of swap.  I understand his real argument to

10  be, swaps have to be traded on exchange, and because they have

11  to be traded on exchange, everything's a felony under Kalshi's

12  view, and I want to be very clear, that is not our position,

13  and that is not what we believe the statute requires, for

14  reasons that defendants themselves point out in their brief.

15         What Section 2A of the Commodity Exchange Act does, is

16  it provides exclusive jurisdiction to the CFTC over on exchange

17  transactions, and then it has a savings clause, the savings

18  clause that my colleague referred to that says, except as

19  hereinabove provided by the grant of exclusive jurisdiction

20  over on exchange trading.  The language that Congress used is

21  nothing contained in this section shall supersede or limit the

22  jurisdiction of regulatory authorities under the laws of any

23  state, or restrict state authorities from carrying out their

24  duties and responsibilities in accordance with such laws.

25         So that savings clause makes clear that nothing else

Page 17

1   in section two, which includes the requirement that they

2   referred to that, that swaps have to be traded on exchange,

3   limits states from subjecting sportsbooks or gambling casinos,

4   or -- I'm not sure exactly what the scope of their argument is,

5   but nothing about the rest of section two limits states from

6   subjecting sportsbooks to their own state authority and Chief

7   Judge Chagares, you know, they as you noted, they made the

8   argument that, well, these don't fall within the statutory

9   definition of a swap, and as you noted, I mean, the definition

10  that Congress used in Dodd-Frank is quite broad.  It is any

11  event associated with potential financial, economic, or

12  commercial consequences --

13          JUDGE PORTER:  Let me ask you a question similar to

14  what I asked your friend.  What kinds of sports betting are

15  available off the designated -- outside the designated contract

16  markets?

17          MR. HAVEMANN:  Sports bets offered by sportsbooks in

18  New Jersey and around the country are permissible and they're

19  regulated by state law, and if they do not occur on DCMs, they

20  may be regulated under state law.  That we think is the clear

21  import of the CEA and the Dodd-Frank Amendments, and that is

22  certainly our position here.  So the parade of horribles about

23  every, you know, casino or every sports book being a felon, if

24  the District Court's injunction is affirmed, just simply does

25  not obtain.

Page 18

```
 1          Now, they -- I -- I think I want to emphasize what I
 2    understand to be the breadth of defendant's arguments here,
 3    because, of course, you know, the context in which we are here
 4    is with respect to sports event contracts, but the argument
 5    that they make in their brief is quite a bit broader than that.
 6    Their view is that they get to regulate anything they deem to
 7    be gaming, even if/or gambling, even if it happens on a
 8    designated contract market, and let's just look to how New
 9    Jersey defines gambling.  New Jersey defines gambling to mean
10    staking, or risking something of value upon the outcome of a
11    future contingent event.
12          So if they are right that they can regulate anything
13    they understand to be gaming, even if it happens on a DCM, even
14    if it happens on a federally regulated, subject to the
15    exclusive jurisdiction of the CFTC, then that certainly means
16    they can regulate every event contract, contrary to the clear
17    intent of Congress and Dodd-Frank to put event contracts within
18    the jurisdiction of the CFTC, and it may well mean they could
19    regulate every futures contract, because, of course, futures
20    can be understood to be placing a thing of value on a future
21    event.  The rise of price in gold, the rise in price in an
22    underlying commodity.
23          And if that sounds familiar to the Court, it's because
24    states tried to do this.  They tried to do this between 100 and
25    150 years ago, when many states developed their gambling
```

Page 19

1    statutes specifically to target futures trading, which they

2    understood to be gambling.

3           And we cite an important case from the Illinois

4    Supreme Court in our brief, where the Illinois Supreme Court

5    says, you know, dealing in futures to be settled according to

6    the fluctuations of the market is void for contrary to public

7    policy, is a crime, this species of gambling has become

8    emphatically and preeminently the national sin.

9           That's what -- that's how the Supreme Court of

10   Illinois understood futures trading in 1888, and so it is

11   absolutely not correct, as defendants say, to say that Congress

12   wouldn't have had in mind when it granted exclusive

13   jurisdiction to the CFTC over futures trading after

14   experimenting with decades of concurrent state and federal

15   regulation, after recognizing, after holding hearings, after

16   hearing from witnesses, after revising the prior version of the

17   statute to grant exclusive jurisdiction to the CFTC.  After one

18   senator noted on the floor, that that allowing states to

19   regulate this themselves would lead to total chaos.  They

20   absolutely would have had in mind, would have been front and

21   center in Congress's mind, that one of the things that they

22   were doing when they granted the CFTC jurisdiction was

23   preempting state law in the narrow application --

24           JUDGE PORTER:  So you --

25           MR. HAVEMANN:   -- of trading on DCMs.

Page 20

```
1          JUDGE PORTER:  In the brief, you invoked field
2    preemption and conflict preemption, what's the -- what's the
3    scope of the field that you're arguing?
4          MR. HAVEMANN:  The field that Congress has preempted
5    is the field of regulating trading on federally designated
6    contract markets, and we think that that's actually --
7    although, the Seventh Circuit couched its decision in conflict
8    preemption terms, I mean, we cite a case that says, you know,
9    these categories are not rigidly distinct.  We understand the
10   Seventh Circuit case.
11         JUDGE CHAGARES:  But see, you've -- you've argued
12   alternatively, which do you think is the appropriate, more
13   appropriate analysis, conflict or field?
14         MR. HAVEMANN:  We certainly think both, but you know,
15   the District Court ruled on field preemption.
16         JUDGE CHAGARES:  Yes.
17          MR. HAVEMANN:  We think that's absolutely right.  We
18       can -- we think that the Court can affirm on that basis,
19       and we just think that if there's any doubt on that
20       question, if there's any doubt about the, you know, the
21       nature of the field or anything else, if you look to
22       conflict preemption, it's equally clear for the reason
23       that the Seventh Circuit again, noted in the American
24       Agriculture case, what the Seventh Circuit said is a state
25       law that would directly affect trading on or the operation
```

Page 21

1          of a futures market is preempted.  So whether you think

2          about that in terms of conflict preemption or whether you

3          think about it in terms of field preemption, we think that

4          you sort of get to the same result, and there are a bunch

5          of specific respects in which we think that there is a

6          conflict that we'd be happy to go into.

7              Just -- I mean, I think that my colleague noted at the

8      end of his argument that all Kalshi needs to do is get a

9      license in New Jersey.  I want to be very clear that it would

10     be impossible for Kalshi to get license in New Jersey, because

11     one of the things that New Jersey requires for people to get a

12     license is to accept what they call bets.  So if we're in a

13     world where we're subject to state regulation, if we're

14     offering bets, then we have to accept bets only from people in

15     the State of New Jersey.

16             And how is a nationwide exchange subject to impartial

17     access requirements imposed by the CFTC, upon which our CFTC

18     designation depends.  How could we accept bets only from people

19     within New Jersey?  And again, it's not just New Jersey.  So if

20     New Jersey is right about whether their state licensing regime

21     can apply here, then you have 49 other states and the District

22     of Columbia that can impose overlapping, conflicting, redundant

23     requirements on a DCM, and if you look to what Congress did in

24     1974, this is exactly the result that Congress wanted to avoid

25     when it subjected these exchanges to the exclusive jurisdiction

Page 22

1   of the CFTC.  The chaos that Congress wanted to avoid when

2   it -- when it created the exclusive jurisdiction provision and

3   created the CFTC.

4              JUDGE CHAGARES:  What are some kinds of sports betting

5   that would not fall within your definition of swap?

6              MR. HAVEMANN:  I think that there are probably certain

7   player props that would not have, you know, sufficient economic

8   consequences to fit within the definition.

9              JUDGE CHAGARES:  But like if Judge Porter challenged

10  me to ping pong, which he would destroy me, but that you could

11  vote -- but the clerks might be interested in voting on that

12  one.  Go with him, he'd beat me.

13             MR. HAVEMANN:  Yeah, I think, Your Honor, if it's --

14  if it's a game between two, two people without extrinsic

15  consequences.  So it may be very consequential to you both, but

16  not sort of financial extrinsic consequences in the world, then

17  I think they sort of say, well, a raffle or a bet on a, a

18  little league game or the like, and nothing of the sort would

19  be a swap.

20             JUDGE CHAGARES:  Well, it does have to impact

21  economics, right?

22             MR. HAVEMANN:  Right.

23             JUDGE CHAGARES:  Okay.  So that wouldn't.  I mean, you

24  pointed out the Super Bowl.  All right.  That's going to have

25  the Eagles win the Super Bowl or the Steelers, for that matter.

Page 23

1    You know, and then that's going to impact folks economically,

2    but just how granular do you need to get?  I mean I've seen

3    your -- the website, and you know there's a lot of really very

4    specific things.

5          MR. HAVEMANN:  Yeah, I -- so I think that Congress, as

6    you noted, Chief Judge, used a broad definition, but that

7    definition does not encompass everything.  It still has to have

8    potential financial consequences.  I'm sure that there is a de

9    minimis, you know, respect in which it may, even if you put

10   money on a bet or something like that, that's not what Congress

11   has in mind.

12          It also has to be outside of the control of the

13   parties.  So that's another limitation, and then there's a

14   whole list of exclusions from that definition, and then they

15   give the CFTC authority to -- to create further exclusions,

16   which the CFTC has done, and it has done in a way, by the way,

17   that would probably even if you thought we were in a world

18   where the CFTC has authority over off exchange transactions,

19   they've probably exempted all of this stuff anyway.

20          But the key statutory sort of distinction that

21   Congress has drawn since 1974 is, if it's on exchange, it's

22   subject to the CFTC'S jurisdiction.  If it's off exchange, the

23   states can regulate it, and that is a sensible result, we

24   think, and it is certainly, you know, they invoke the absurdity

25   canon, and it's certainly nothing like the sort of evidence

Page 24

1    that they would have to show to overcome the clear statutory

2    text.

3          And the one final point on that that I would just make

4    is if the Court harbors any doubt about this, I mean, there are

5    a number of other sort of things that you can look to to dispel

6    that doubt, and one is the special rule itself.  The special

7    rule, which is how Congress wanted the CFTC to address certain

8    kinds of event contracts that Congress recognized, you know,

9    deserve closer scrutiny is to have the CFTC subject those

10   contracts to review and to give the CFTC the authority to make

11   a public interest call with respect to those contracts, and

12   right there in the text of the special rule is gaming.  So

13   if -- even if, you know, they certainly can't point to anything

14   in the statute that would allow them to sort of atextually

15   exclude gaming contracts, and the opposite is true.

16         JUDGE PORTER:  Yeah, I'm good.

17         JUDGE CHAGARES:  Back to field preemption, and -- and

18   let me talk about that just for a minute.  It seems that you

19   agree with your friends on the other side, that the -- that the

20   CEA does not preempt some state common law fraud claims.  I'm

21   just wondering, can -- can -- how then can field preemption

22   occur?  I maybe I have it wrong.  Doesn't Congress have to have

23   left no room at all for state regulation?

24         MR. HAVEMANN:  So that the key, Your Honor, is in how

25   to define the preempted field.  So because the field that is

Page 25

1    preempted is not, all derivatives transactions or not

2    everything that touches a derivatives transaction, the field is

3    instead the regulation of trading on a DCM, and I think that

4    what courts immediately recognized and then there were

5    subsequent amendments to the CEA that codified that

6    recognition, is that when you are applying a state law fraud

7    claim to fraud that happens to happen, that happens to happen

8    on a DCM, then you're not really regulating futures trading on

9    a DCM, you're regulating fraud that happens to happen there.

10   It's not a direct regulation, and that's what courts -- that's

11   how courts interpreted the CEA right from the beginning, right

12   from 1974 when it added the exclusive jurisdiction provision.

13   And then Congress codified that, in subsequent amendments to

14   the CEA, like where it provided certain authority to states,

15   including the authority, of course, to bring state common law

16   claims under their fraud laws when it enacted Section 16 in

17   1983, which refers to state common law fraud -- common law

18   fraud actions.

19          JUDGE PORTER:  When I asked you for examples of kinds

20   of sports betting that -- that aren't included within a swap, I

21   guess I really only heard you say, kind of, player props.  So I

22   guess I can understand -- I'm not saying you need to apologize

23   for this.  If it's preempted, it's preempted, but I can

24   understand why New Jersey thinks, man, you've sort of taken

25   everything that we're accustomed to regulating.  Does that sort

Page 26

1   of makes sense?

2           MR. HAVEMANN:  I certainly understand their argument,

3   but again, the key difference is we're not preventing them from

4   regulating state sportsbooks.  What we're preventing them from

5   regulating is conduct that states have not, since 1974,

6   regulated, which is trades on a DCM, and there's lots of other

7   things that a state may well view as being gambling within the

8   broad definition of gambling that many states, including New

9   Jersey, have, that I don't think -- I do not believe it's

10  subject to reasonable dispute, that even though a state may

11  think it falls within their gambling statute, if it's on the

12  DCM, it's off limits for the state, and the same thing is true

13  here.

14          And we think that that is a sensible result, and it's

15  a result that's commanded by the text of the CEA, by the

16  history of the CEA, by the, you know, deliberation that went

17  into the decision to grant the commodity -- the CFTC, exclusive

18  jurisdiction over trading on designated contract markets while

19  leaving it up to the states.

20          JUDGE CHAGARES:  Your friend mentioned a couple of

21  other congressional acts.  I think one was -- he didn't say it

22  specifically, but it was in the brief, Indian Gaming Regulatory

23  Act, and the other one, Unlawful Internet Gambling Enforcement

24  Act and that, that supported his position.  Maybe you could

25  just reply to that?

Page 27

```
 1              MR. HAVEMANN:  Sure.  So I'll take each in turn.

 2              JUDGE CHAGARES:  Okay.

 3              MR. HAVEMANN:  As to IGRA, the Indian Gaming

 4    Regulatory Act --

 5              JUDGE CHAGARES:  Right.

 6              MR. HAVEMANN:  -- many of the other statutes they

 7    refer to, none of those statutes -- they do broadly turn on

 8    state law, but none of them suggest that states have the

 9    authority to regulate gaming, in the specific application here,

10    which is in the application of trading on designated contract

11    markets, and they don't define, bet or wager --

12              JUDGE CHAGARES:  They refer to bet or wager, right?

13    Yes.

14              MR. HAVEMANN:   They refer, but they don't define.

15              JUDGE CHAGARES:  Okay.

16              MR. HAVEMANN:  The one statute, Chief Judge Chagares,

17    that does define, bet, or wager, is the UIGEA, which is the

18    second statute you referred to, and that statute expressly

19    carves out from the definition of bet or wager, a trade that

20    happens on a federally designated contract market, because, of

21    course, Congress has always understood that if it's on a

22    designated contract market since 1974, it's not up to states to

23    regulate it.  It's up to the CFTC to regulate it, and as

24    defendants themselves note, the UIGEA was enacted just four

25    years before Dodd-Frank.
```

Page 28

1        So Dodd-Frank, you know, happens in the wake of the

2    UIGEA, and the wake of Congress's recognition that this sort of

3    conduct, even though broadly, you know, primarily, of course,

4    it is still true that states primarily have the authority to

5    regulate gaming, just not in the narrow application here.

6            JUDGE CHAGARES:  All right. Thank you.

7            MR. HAVEMANN:   Thank you.

8            JUDGE CHAGARES:  Do you have anything else, Judge

9    Porter?  Judge Roth, do you have anything else?

10            JUDGE ROTH:  Nothing further.  Thank you.

11            JUDGE CHAGARES:  Okay.  Thank you.  Thank you,

12    counsel, we'll hear rebuttal.

13            MR. EHRLICH:  Thank you, Your Honor.

14            JUDGE CHAGARES:  Sure.

15            MR. EHRLICH:  I'd like to make five hopefully fairly

16    brief points, two on swap and three on preemption.

17            First on swap, I think, again, we heard from the other

18    side.  Don't worry.  Nothing to see here.  CFTC is just

19    controlling what's on their designated contract markets.  I've

20    never heard an explanation of how that works with the statute.

21    Section 2E makes it illegal for persons to trade swaps outside

22    of designated contract markets.  Section 6D(a) talks about how

23    companies have to register in order to accept swaps.  So our

24    casinos are not registered, for example, and then 13A makes it

25    a crime to trade -- to willfully violate the Commodity Exchange

Page 29

1    Act.

2         I have no idea what they're talking about when they

3    say don't worry, this can only be limited to designated

4    contract markets, that's not how the statute works.  On their

5    point for limiting principles on their view, I don't see any

6    limiting principles.  The ones that they've pointed to

7    themselves are atexual.  The idea that it has to have

8    consequences out in the real world is true for literally

9    everything.  As we point out in our brief and the attenuated

10   examples they give, they don't even reference sporting events

11   that themselves are doing something immediately economic.  It's

12   talking about a winning Super Bowl equals a parade equals

13   financial consequences, and there's no end to that, and I think

14   when you -- you see that on their platform now, now they're

15   putting on prop bets that are examples of a player catches a

16   certain number of passes, or the teams score a certain number

17   of points.  I mean, if they're saying those things are linked

18   to potential financial, economic or commercial consequences, I

19   have no idea what the limiting principle is.

20        There's no limit on it being beyond the control of the

21   parties, by the way, that's in the definition of excluded

22   commodity, not under the definition of swap.  So that would

23   come into play later in the process.  So that's not a limiting

24   principle, and then we talk about de minimis that's also made

25   up, so I just think there's no actual limit on what -- on what

Page 30

1   they would cover with their definition.

2        And second, on the -- on the swap point, I again heard

3   no answer to there's a text here.  Congress could have been

4   clearer, either way.  They could have said swaps are clearly

5   sports bets are in or sports bets are out, but they didn't say

6   that, and so we have to use the canons of statutory

7   construction to figure out what the text means.  No answer to

8   the three clear statement rules that clearly point in our favor

9   on this: major questions, not altering the balance, and implied

10  repeal, and I would point that out for Your Honors.

11        On preemption -- and I see my time is running short.

12  On exclusive jurisdiction, we point this out in our brief, but

13  exclusive jurisdiction was meant to separate the jurisdiction

14  of the federal agencies.  It wanted to give exclusive

15  jurisdiction to the CFTC, and there's nothing that there's --

16  if you do an actual field preemption analysis, there's no --

17        JUDGE CHAGARES:  Okay.  We'll give you a little more

18  time.

19        MR. EHRLICH:  Okay.

20        JUDGE CHAGARES:  It's okay. Go ahead.

21        MR. EHRLICH:  Okay.  Thank you, Your Honor.

22        So I'll slow down a little bit then.

23        JUDGE CHAGARES:  Okay.

24        MR. EHRLICH:  Exclusive jurisdiction was meant to

25  separate out the jurisdiction from the CFTC and other federal

Page 31

1    agencies.  It was not meant to preempt the field.  Again, the

2    Seventh Circuit said this in the American Agriculture case.

3    And as we point out in our brief, really, if you're looking at

4    a single statutory provision that's supposed to do some

5    preemption, that's an express preemption argument.  They're not

6    arguing express preemption.  Nobody has ever argued express

7    preemption here, and we have this Court in Farina rejecting

8    field preemption where an agency in that case, the FCC had

9    exclusive authority to do something.

10        So it's not unprecedented, and when you look at the

11   legislative history for this, you have, you know, legislators

12   saying what we're really concerned about is field preemption,

13   the language they use in the conference report that both

14   parties cite is substantive state laws that are contrary to or

15   inconsistent with federal law are preempted.  That's classic

16   conflict preemption.

17        And so I think for those reasons, we would say no

18   field preemption here, and I mentioned the lack of a

19   comprehensive scheme.  They don't even try to do that sort of

20   classic field preemption analysis.  This is not like, in-air

21   flight operations, or nuclear power plants or anything like

22   that.  There's no comprehensive scheme.  Kansas versus Garcia

23   tells us these are rare cases of field preemption.  This is not

24   one of them.

25        And then lastly, Your Honor, I would just say I guess

Page 32

1    two subsidiary points, but footnote 10, in our brief, we

2    addressed their point that they can't take bets outside of New

3    Jersey.  Our laws are limited to New Jersey because we can't

4    regulate outside of New Jersey.  We're not saying you can only

5    accept bets in New Jersey.  That's not what our statute means.

6    We've never taken that position.  So that's --

7         JUDGE CHAGARES:  Wait, your statute doesn't say you

8    have to physically be in New Jersey to make a bet?

9         MR. EHRLICH:  No, no.  For New Jersey residents, you

10   have to comply with our laws, but I think their point was where

11   our laws are restricting them to only accepting bets in New

12   Jersey, and that's not what it's doing.  They if they can

13   accept bets outside of New Jersey, in compliance with other

14   state and federal law.

15        JUDGE PORTER:  I thought they were saying, we can't

16   tell if some bettor is in New Jersey or not.

17        MR. EHRLICH:  Well, maybe they're saying that, I

18   didn't take them to be saying that, but if they are, I mean,

19   there's ways to deal with that.  There's geolocation

20   technology.  There's a company called Sporttrade that does

21   exactly what Kalshi is doing in New Jersey, right now and has a

22   New Jersey gaming license, so there's ways to deal with those

23   sorts of things.  It's certainly not an obstacle or an

24   impossibility when, as I said, federal law prohibits what

25   they're doing and state law prohibits, too.

Page 33

1     And the last thing I'll just say for Your Honors, this
2     would, as the amicus briefs point out, and I pointed out in my
3     opening with Congress not intending this to be the result.  The
4     CFTC does not regulate gaming.  They are woefully inadequate to
5     regulate gaming, and we see this in the -- in the CFTC's own
6     notices in the Federal Register, and I would point Your Honors
7     to 89 Fed Reg 48982, where they said the Commodity Exchange Act
8     and the Commission regulations are focused on regulating
9     financial instruments and markets, and do not include
10    provisions aimed at protecting against gambling specific risks
11    and concerns, including customer protection concerns inherent
12    in gaming.
13        So this would be a massive sea change in how to
14    regulate gaming.  Again, if they're correct, all of it has to
15    be on a CFTC regulated exchange and would preempt all state
16    laws.  Our case is narrow, it's just about sports.  It's not
17    about anything else, but even in that this is a massive
18    billions and billions of dollar industry that they're upending
19    with the -- with their theories here.  So with that, I
20    appreciate the Court's indulgence in letting me go over time,
21    and we would ask that the Court reverse.
22        JUDGE CHAGARES:  Thank you, thank you, thank you,
23    counsel.  We'd ask that the that the parties order a transcript
24    and split the cost of that, of this particular oral argument.
25    We're going to take this case under advisement.  It's an

                                                             Page 34

1    interesting case, really well litigated, and thank you,

2    counsel, for your excellent briefing and arguments here today.

3    And with that, we'll ask the --

4         (Whereupon these proceedings were concluded at 10:07 AM.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                      C E R T I F I C A T I O N

3

4    I, Becky Kleiner, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8    _____

9    Becky Kleiner

10

11   eScribers

12   7227 North 16th Street, Suite #207

13   Phoenix, AZ 85020

14

15   Date:  September 16, 2025

16

17

18

19

20

21

22

23

24

25

**[08611 - antitrust]**                                    Page 1

| 0 | 4 | access 21:17 | ago 6:13 18:25 |
|---|---|---|---|

**0**

**08611** 3:15

**1**

**10** 1:17 32:1
**100** 18:24
**10:07** 34:4
**1101** 3:5
**13a** 28:24
**150** 18:25
**16** 25:16 35:15
**16th** 2:20 35:12
**18** 13:13
**1888** 19:10
**1940s** 11:10
**1974** 21:24
    23:21 25:12
    26:5 27:22
**1983** 25:17

**2**

**2** 8:6
**20005** 3:6
**2010** 6:2 9:10
**2025** 1:17
    35:15
**207** 2:20 35:12
**25** 3:13
**25-1922** 1:8 4:4
**257-0885** 2:22
**2a** 16:15
**2e** 28:21

**4**

**48982** 33:7
**49** 21:21

**5**

**52** 13:22

**6**

**6d** 28:22

**7**

**7227** 2:20
    35:12

**8**

**800** 2:22
**85020** 2:21
    35:13
**89** 33:7

**9**

**9:30** 1:18

**a**

**absolutely**
    19:11,20 20:17
**absurdity**
    23:24
**accept** 21:12,14
    21:18 28:23
    32:5,13
**acceptance**
    11:9
**accepted** 9:4
    11:11 12:12
**accepting**
    32:11

access 21:17
**accommodated**
    9:4
**accordance**
    16:24
**accurate** 35:5
**accustomed**
    25:25
**act** 5:12 6:1
    9:19 16:15
    26:23,24 27:4
    29:1 33:7
**act's** 5:23 9:7
**actions** 25:18
**acts** 26:21
**actual** 29:25
    30:16
**actually** 4:18
    6:20 20:6
**added** 25:12
**address** 24:7
**addressed** 32:2
**adjacent** 10:17
**admits** 12:25
**advisement**
    33:25
**affect** 20:25
**affirm** 20:18
**affirmed** 5:16
    17:24
**agencies** 8:25
    30:14 31:1
**agency** 31:8

ago 6:13 18:25
**agree** 7:13
    12:17,20 13:3
    14:5 24:19
**agriculture**
    14:17 20:24
    31:2
**ahead** 13:15
    30:20
**aimed** 33:10
**air** 31:20
**al** 1:10
**allow** 11:22
    24:14
**allowed** 9:21
    14:2
**allowing** 19:18
**altering** 30:9
**alternatively**
    20:12
**amendments**
    17:21 25:5,13
**american** 14:17
    20:23 31:2
**amicus** 8:22
    33:2
**analysis** 5:20
    20:13 30:16
    31:20
**answer** 14:20
    30:3,7
**anti** 13:23
**antitrust** 13:22

**anyway** 14:9
  23:19
**apologize** 25:22
**apparently**
  9:11,12
**appeal** 10:9
**appeals** 1:3,14
  1:24
**appellant** 3:12
**appellant's** 4:4
**appellants** 1:11
  4:7,13
**appellee** 1:8 3:4
  15:20
**application**
  19:23 27:9,10
  28:5
**applies** 8:11
**apply** 6:25
  12:21,22 14:5
  15:14 21:21
**applying** 25:6
**appreciate**
  33:20
**appropriate**
  12:21 20:12,13
**area** 12:14
**argued** 20:11
  31:6
**arguing** 8:7
  9:21 20:3 31:6
**argument** 15:3
  16:9 17:4,8
  18:4 21:8 26:2

31:5 33:24
**arguments**
  11:3 14:6 18:2
  34:2
**article** 10:7
**asked** 17:14
  25:19
**associated** 7:6
  7:7,8,11,24 8:1
  8:12 17:11
**atextually**
  24:14
**atexual** 29:7
**attenuated**
  10:10 29:9
**attorney** 3:11
  3:12
**attorneys** 3:4
  3:12
**authorities**
  16:22,23
**authority** 17:6
  23:15,18 24:10
  25:14,15 27:9
  28:4 31:9
**available** 17:15
**ave** 3:5
**avoid** 21:24
  22:1
**aware** 11:13,14
**az** 2:21 35:13

**b**

**b** 1:20
**back** 24:17
**balance** 30:9
**basis** 20:18
**beat** 22:12
**becky** 2:18 35:4
  35:9
**began** 16:8
**beginning**
  25:11
**behalf** 4:7
  15:23
**believe** 16:13
  26:9
**bet** 22:17 23:10
  27:11,12,17,19
  32:8
**bets** 17:17
  21:12,14,14,18
  29:15 30:5,5
  32:2,5,11,13
**better** 15:3,4
**betting** 9:11
  10:14 13:2,14
  17:14 22:4
  25:20
**bettor** 32:16
**beyond** 29:20
**billions** 33:18
  33:18
**bit** 18:5 30:22

**book** 17:23
**borders** 5:17
**bowl** 10:6
  22:24,25 29:12
**branches** 7:1,3
  7:21
**breadth** 18:2
**brief** 6:22 7:8
  7:25 8:23 13:1
  13:22 16:14
  18:5 19:4 20:1
  26:22 28:16
  29:9 30:12
  31:3 32:1
**briefing** 34:2
**briefs** 9:23 12:3
  12:16 13:1
  15:7 33:2
**bring** 25:15
**broad** 6:20
  7:12,13 8:23
  17:10 23:6
  26:8
**broader** 18:5
**broadly** 27:7
  28:3
**bunch** 21:4
**business** 7:19

**c**

**c** 3:2 4:1 35:2,2
**cal** 5:2
**call** 21:12
  24:11

**called** 32:20
**cancer** 7:8 8:1
**canon** 23:25
**canons** 30:6
**carrying** 16:23
**carves** 27:19
**case** 1:7 4:2
  8:17 11:21
  12:21 14:7,7
  14:17,25 15:7
  16:4 19:3 20:8
  20:10,24 31:2
  31:8 33:16,25
  34:1
**cases** 31:23
**casino** 17:23
**casinos** 6:7
  11:23 15:11
  17:3 28:24
**catches** 29:15
**categories** 20:9
**cea** 17:21 24:20
  25:5,11,14
  26:15,16
**center** 19:21
**certain** 11:24
  12:10,10 13:16
  22:6 24:7
  25:14 29:16,16
**certainly** 6:8
  11:21 14:4
  17:22 18:15
  20:14 23:24,25
  24:13 26:2

32:23
**certify** 35:4
**cftc** 6:4,12 9:9
  9:13,24 10:3
  10:22 12:7
  13:5,5 15:25
  16:16 18:15,18
  19:13,17,22
  21:17,17 22:1
  22:3 23:15,16
  23:18 24:7,9
  24:10 26:17
  27:23 28:18
  30:15,25 33:4
  33:15
**cftc's** 23:22
  33:5
**chagares** 1:21
  4:2,9,11,15,21
  4:23 5:3,6 6:16
  6:18 7:10,18
  8:3,8,15 12:15
  12:19 13:12,17
  14:9,12,18,22
  15:16,19 16:5
  17:7 20:11,16
  22:4,9,20,23
  24:17 26:20
  27:2,5,12,15,16
  28:6,8,11,14
  30:17,20,23
  32:7 33:22
**challenged**
  22:9

**change** 5:25 6:3
  8:20 33:13
**chaos** 19:19
  22:1
**chief** 1:21 16:5
  17:6 23:6
  27:16
**choice** 5:17
**cipollone** 11:25
**circuit** 1:2,14
  1:22,23,24
  13:1 14:17
  20:7,10,23,24
  31:2
**circumstance**
  13:8
**circumstances**
  12:23
**cite** 14:19 19:3
  20:8 31:14
**claim** 25:7
**claims** 12:5
  24:20 25:16
**classic** 31:15,20
**clause** 16:17,18
  16:25
**clauses** 8:5 12:3
**clear** 5:18 8:19
  9:1,6,14 10:12
  11:1 16:12,25
  17:20 18:16
  20:22 21:9
  24:1 30:8

**clearer** 30:4
**clearly** 14:16
  16:2 30:4,8
**clerks** 22:11
**client's** 4:12
**closer** 24:9
**coalition** 8:23
**codified** 25:5
  25:13
**colleague** 16:8
  16:18 21:7
**collegiate** 13:14
  13:16
**columbia** 21:22
**come** 29:23
**commanded**
  26:15
**commercial**
  7:11 17:12
  29:18
**commission**
  33:8
**commodities**
  6:1
**commodity**
  5:12,23 9:19
  16:15 18:22
  26:17 28:25
  29:22 33:7
**common** 24:20
  25:15,17,17
**companies**
  13:20,23 28:23

**company** 13:6
32:20
**complex** 3:14
**compliance**
32:13
**comply** 13:10
13:19 32:10
**comprehensive**
31:19,22
**concerned**
31:12
**concerns** 33:11
33:11
**concluded** 34:4
**concurrent**
19:14
**conduct** 26:5
28:3
**conducted** 13:2
**conference**
31:13
**conflict** 5:21
12:16,20,24
13:8 14:3,4,5
20:2,7,13,22
21:2,6 31:16
**conflicting**
21:22
**conflicts** 13:12
13:25
**congress** 5:14
5:16,24 6:9
7:14 8:19,25
9:2,3,7 10:4,10

11:11,13,18
12:13 13:2,3
14:8 15:10
16:20 17:10
18:17 19:11
20:4 21:23,24
22:1 23:5,10
23:21 24:7,8
24:22 25:13
27:21 30:3
33:3
**congress's** 12:9
15:24 19:21
28:2
**congressional**
11:9 26:21
**connected** 7:7
**consequence**
7:12
**consequences**
17:12 22:8,15
22:16 23:8
29:8,13,18
**consequential**
22:15
**constitution**
13:17
**construction**
30:7
**contained**
16:21
**context** 8:4
18:3

**contingent**
18:11
**contract** 6:4
16:1,3 17:15
18:8,16,19
20:6 26:18
27:10,20,22
28:19,22 29:4
**contracts** 11:21
14:15 18:4,17
24:8,10,11,15
**contrary** 15:7
18:16 19:6
31:14
**control** 23:12
29:20
**controlling**
28:19
**controls** 11:6
**correct** 13:18
19:11 33:14
**correctly** 15:24
**cost** 33:24
**couched** 20:7
**counsel** 4:4
16:6 28:12
33:23 34:2
**country** 17:18
**counts** 10:2
**couple** 26:20
**course** 18:3,19
25:15 27:21
28:3

**court** 1:3,14,24
5:10,22 6:10
8:22 11:12,17
11:25 15:23,24
18:23 19:4,4,9
20:15,18 24:4
31:7 33:21
**court's** 5:18
9:12 17:24
33:20
**courts** 12:4,5
25:4,10,11
**cover** 30:1
**create** 14:3
23:15
**created** 22:2,3
**crime** 6:5 9:22
19:7 28:25
**critical** 8:18
**cup** 10:9
**currently** 6:8
**customer** 33:11
**cut** 8:18

**d**

**d** 4:1
**d.c.** 13:1
**date** 35:15
**david** 1:22
**dc** 3:6
**dcm** 9:22 18:13
21:23 25:3,8,9
26:6,12

dcm's 9:17
dcms 14:1
  17:19 19:25
de 15:9,10 23:8
  29:24
deal 7:3,21
  13:14,20,24
  32:19,22
dealing 19:5
decade 11:10
decades 19:14
decision 5:10
  5:18 9:12
  15:24 20:7
  26:17
declined 5:14
deem 18:6
defendant's
  18:2
defendants
  16:2,14 19:11
  27:24
define 24:25
  27:11,14,17
defines 18:9,9
definition 5:24
  6:6,19 9:25
  16:9 17:9,9
  22:5,8 23:6,7
  23:14 26:8
  27:19 29:21,22
  30:1
deliberation
  26:16

depends 21:18
depth 8:23
derivative 13:3
derivatives
  25:1,2
deserve 24:9
designated 6:4
  9:22 14:15
  16:1,3 17:15
  17:15 18:8
  20:5 26:18
  27:10,20,22
  28:19,22 29:3
designation
  21:18
destroy 22:10
developed
  18:25
difference 26:3
direct 25:10
directly 20:25
discretion 13:4
discrimination
  13:23
discussing 11:2
discussion
  12:15
dispel 24:5
dispute 26:10
distinct 20:9
distinction
  23:20
district 15:24
  17:24 20:15

  21:21
divesting 12:4
doctrine 8:24
dodd 6:2 7:15
  17:10,21 18:17
  27:25 28:1
doing 9:5 10:4
  10:12 13:6
  19:22 29:11
  32:12,21,25
dollar 33:18
doubt 20:19,20
  24:4,6
drawn 23:21
duties 16:24

e

e 1:20,20 3:2,2
  3:8 4:1,1 35:2
eagles 10:5
  22:25
easier 5:5
economic 6:24
  7:11 8:25
  17:11 22:7
  29:11,18
economically
  23:1
economics
  22:21
efforts 16:2
ehrlich 3:17 4:6
  4:6,10,13,18,22
  5:5,8 6:17 7:4

  7:13,22 8:4,9
  8:16 9:18
  10:16 12:17,20
  13:16,18 14:11
  14:13 15:5
  28:13,15 30:19
  30:21,24 32:9
  32:17
either 30:4
elected 7:1,3,21
emphasize 18:1
emphatically
  19:8
enacted 9:10
  11:18 25:16
  27:24
enacting 11:23
encompass
  23:7
enforcement
  26:23
environment
  11:7
envision 10:24
envisioning
  6:10
equally 20:22
equals 29:12,12
erlich 14:19
escribers 2:19
  35:11
escribers.net
  2:23

**especially** 7:6
  12:9,13
**esq** 3:8,17
**essentially** 6:7
  9:24 10:17
  13:4
**et** 1:10
**event** 17:11
  18:4,11,16,17
  18:21 24:8
**events** 29:10
**everything's**
  16:11
**evidence** 23:25
**exactly** 7:15
  11:16 13:18
  17:4 21:24
  32:21
**example** 7:8,25
  10:20 28:24
**examples** 10:5
  10:14,16 13:22
  25:19 29:10,15
**excellent** 34:2
**except** 16:18
**exchange** 5:12
  5:23 6:1 9:19
  9:23 16:10,11
  16:15,16,20
  17:2 21:16
  23:18,21,22
  28:25 33:7,15
**exchanges** 6:4
  21:25

**exclude** 10:23
  24:15
**excluded** 29:21
**excluding** 12:8
**exclusions**
  23:14,15
**exclusive** 15:25
  16:16,19 18:15
  19:12,17 21:25
  22:2 25:12
  26:17 30:12,13
  30:14,24 31:9
**excuse** 12:17
**exempted**
  23:19
**expected** 6:13
**experimenting**
  19:14
**explanation**
  28:20
**explicit** 12:10
**express** 5:20
  11:18,24 31:5
  31:6,6
**expressly** 27:18
**extent** 7:1
**extrinsic** 22:14
  22:16

**f**

**f** 1:20 35:2
**fact** 6:5 9:1
  12:11 14:2

**fairly** 28:15
**fall** 8:1 10:22
  17:8 22:5
**falls** 5:11 26:11
**familiar** 18:23
**farina** 31:7
**favor** 30:8
**fcc** 31:8
**fed** 33:7
**federal** 6:5,8
  8:20 9:4,22
  11:22 12:4,22
  13:7,21 19:14
  30:14,25 31:15
  32:14,24 33:6
**federally** 18:14
  20:5 27:20
**feed** 11:3
**felon** 17:23
**felons** 6:8
  11:23 15:12
**felony** 16:11
**field** 5:21 12:14
  14:6,9,9,12,14
  14:19,21 20:1
  20:3,4,5,13,15
  20:21 21:3
  24:17,21,25,25
  25:2 30:16
  31:1,8,12,18,20
  31:23
**figure** 30:7
**final** 24:3

**financial** 6:24
  7:11 8:10,10
  8:12,13 10:11
  10:21 17:11
  22:16 23:8
  29:13,18 33:9
**first** 5:11,12
  11:4 14:25
  28:17
**fit** 22:8
**five** 28:15
**fix** 7:1
**flaherty** 1:10
  4:3
**flight** 31:21
**floor** 19:18
**fluctuations**
  19:6
**focused** 8:6
  33:8
**folks** 23:1
**footnote** 32:1
**foregoing** 35:4
**foresee** 7:15,19
  7:20
**forever** 8:22
**forty** 12:25
**four** 27:24
**frank** 6:2 7:15
  17:10,21 18:17
  27:25 28:1
**fraud** 24:20
  25:6,7,9,16,17
  25:18

**friend** 17:14
26:20
**friends** 24:19
**front** 19:20
**funneled** 9:24
**further** 15:18
23:15 28:10
**future** 18:11,20
**futures** 18:19
18:19 19:1,5
19:10,13 21:1
25:8

**g**

**g** 4:1
**gambling** 5:15
5:17,25 9:4,8
9:17 11:7,10
11:12 12:12
14:7 15:11
17:3 18:7,9,9
18:25 19:2,7
26:7,8,11,23
33:10
**game** 10:17,23
22:14,18
**games** 13:16
**gaming** 10:17
10:19 11:24
12:10,11 18:7
18:13 24:12,15
26:22 27:3,9
28:5 32:22
33:4,5,12,14

**garcia** 31:22
**general** 3:11
**generated** 10:7
**geolocation**
32:19
**give** 7:7 8:25
10:16 23:15
24:10 29:10
30:14,17
**given** 14:24
**go** 4:24,25
13:15 21:6
22:12 30:20
33:20
**goes** 8:23
**going** 12:24
13:8 22:24
23:1 33:25
**gold** 18:21
**good** 4:23,23
15:22 24:16
**gotten** 7:1
**government**
8:20 11:22
**governments**
8:21
**grant** 16:19
19:17 26:17
**granted** 4:9
19:12,22
**granular** 23:2
**great** 5:2,4 11:6
15:16,19

**greater** 10:9
**guess** 15:5
25:21,22 31:25

**h**

**happen** 25:7,7
25:9
**happens** 11:13
18:7,13,14
25:7,7,9 27:20
28:1
**happy** 21:6
**harbors** 24:4
**havemann** 3:8
4:20 5:2 15:22
15:23 17:17
19:25 20:4,14
20:17 22:6,13
22:22 23:5
24:24 26:2
27:1,3,6,14,16
28:7
**hear** 4:4 15:20
28:12
**heard** 25:21
28:17,20 30:2
**hearing** 19:16
**hearings** 19:15
**held** 10:7 15:24
**hereinabove**
16:19
**history** 26:16
31:11

**holding** 19:15
**hon** 1:21
**honor** 4:6,14
5:8,24 7:5
12:18 13:18,25
14:11 22:13
24:24 28:13
30:21 31:25
**honors** 15:22
30:10 33:1,6
**hopefully** 28:15
**horribles** 17:22
**hughes** 3:14
**huh** 6:17
**hundreds** 11:8

**i**

**idea** 15:10 29:2
29:7,19
**igra** 27:3
**illegal** 9:11
13:6,7 28:21
**illinois** 19:3,4
19:10
**immediately**
25:4 29:11
**impact** 22:20
23:1
**impartial** 21:16
**implementing**
13:5
**implied** 30:9
**import** 17:21

| | | | |
|---|---|---|---|
| **important** 19:3 | **injunction** | **jersey** 3:11 | **jump** 6:16 |
| **impose** 21:22 | 14:25 17:24 | 11:23 13:10,11 | **jurisdiction** |
| **imposed** 21:17 | **inserted** 6:1 | 13:13,19 17:18 | 12:4 16:1,16 |
| **impossibility** | 15:11 | 18:9,9 21:9,10 | 16:19,22 18:15 |
| 32:24 | **instance** 6:22 | 21:11,15,19,19 | 18:18 19:13,17 |
| **impossible** | **instrument** | 21:20 25:24 | 19:22 21:25 |
| 21:10 | 8:10,13 10:11 | 26:9 32:3,3,4,5 | 22:2 23:22 |
| **inadequate** | **instruments** | 32:8,9,12,13,16 | 25:12 26:18 |
| 33:4 | 33:9 | 32:21,22 | 30:12,13,13,15 |
| **include** 33:9 | **intend** 5:25 | **jo** 1:10 | 30:24,25 |
| **included** 25:20 | **intending** 33:3 | **joined** 7:7 | **justice** 3:14 |
| **includes** 17:1 | **intent** 18:17 | **judge** 1:21,22 | |
| **including** 25:15 | **interest** 24:11 | 1:23 4:2,9,11 | **k** |
| 26:8 33:11 | **interested** | 4:15,21,23 5:3 | **kalshi** 4:19,21 |
| **incompatible** | 22:11 | 5:6 6:16,18 | 4:22,24,25 5:2 |
| 5:18 | **interesting** | 7:10,18 8:3,8 | 5:11,21 6:6 |
| **inconsistent** | 7:19 34:1 | 8:15 9:15 | 7:23 9:25 |
| 31:15 | **international** | 10:14 12:15,19 | 12:24 14:13 |
| **incorporated** | 10:9 | 13:12,17 14:9 | 15:23 16:3 |
| 11:11 | **internet** 26:23 | 14:12,18,22,23 | 21:8,10 32:21 |
| **incorporates** | **interpretation** | 14:24 15:16,16 | **kalshi's** 16:11 |
| 12:7 | 8:18 | 15:18,19 16:5 | **kalshiex** 1:7 4:2 |
| **independently** | **interpreted** | 16:5 17:7,13 | **kansas** 31:22 |
| 5:9 | 25:11 | 19:24 20:1,11 | **key** 23:20 24:24 |
| **indian** 26:22 | **interstate** 9:8 | 20:16 22:4,9,9 | 26:3 |
| 27:3 | **invoke** 23:24 | 22:20,23 23:6 | **kind** 25:21 |
| **indication** | **invoked** 20:1 | 24:16,17 25:19 | **kinds** 17:14 |
| 11:15 12:1 | **issue** 5:15 6:14 | 26:20 27:2,5 | 22:4 24:8 |
| **indulgence** | 11:20,25 12:11 | 27:12,15,16 | 25:19 |
| 33:20 | **j** | 28:6,8,8,9,10 | **kleiner** 2:18 |
| **industry** 33:18 | | 28:11,14 30:17 | 35:4,9 |
| **inherent** 33:11 | **j** 1:22 3:14 | 30:20,23 32:7 | **know** 4:16 6:22 |
| **inherently** 6:24 | **jane** 1:23 | 32:15 33:22 | 7:8,24,25 8:25 |
| 8:13 | | | 13:23 14:20 |

15:1 17:7,23
18:3 19:5 20:8
20:14,20 22:7
23:1,3,9,24
24:8,13 26:16
28:1,3 31:11

**l**

**lack** 31:18
**language** 7:24
15:25 16:20
31:13
**largely** 9:11
**lastly** 12:6
31:25
**law** 9:4,4 12:7
12:22,23 13:7
13:7 14:3 15:9
15:12 17:19,20
19:23 20:25
24:20 25:6,15
25:17,17 27:8
31:15 32:14,24
32:25
**laws** 5:15 11:10
11:12,14,24
12:11,11,12
13:22,23,23
16:22,24 25:16
31:14 32:3,10
32:11 33:16
**lead** 19:19
**league** 22:18

**leaving** 6:11,12
26:19
**left** 24:23
**legal** 9:9,13
**legislative**
31:11
**legislators**
31:11
**letting** 33:20
**license** 13:9
21:9,10,12
32:22
**licensing** 21:20
**lightly** 8:20,25
9:2
**likelihood** 15:7
**likely** 15:1
**limit** 16:21
29:20,25
**limitation** 6:23
23:13
**limited** 29:3
32:3
**limiting** 8:15
8:16,17 29:5,6
29:19,23
**limitless** 10:1
**limits** 17:3,5
26:12
**link** 8:10,12
10:10
**linked** 10:20
29:17

**list** 13:6 23:14
**literally** 29:8
**litigated** 34:1
**little** 22:18
30:17,22
**llc** 1:7 2:19
**llp** 3:3
**long** 11:5 13:9
**look** 10:6 18:8
20:21 21:23
24:5 31:10
**looking** 7:5,6
31:3
**looks** 12:7
**lot** 12:15 14:6
23:3
**lots** 26:6
**lung** 7:8,25

**m**

**made** 17:7
29:24
**main** 1:7
**major** 8:24
30:9
**make** 6:7 9:8
11:22 15:11
18:5 24:3,10
28:15 32:8
**makes** 5:18
16:25 26:1
28:21,24
**making** 9:10

**man** 25:24
**market** 3:13
6:4 16:3 18:8
19:6 21:1
27:20,22
**markets** 9:23
13:3 14:15
16:1 17:16
20:6 26:18
27:11 28:19,22
29:4 33:9
**mary** 1:10
**massive** 5:25
6:3 33:13,17
**matter** 1:6
22:25
**matters** 15:8
**mean** 6:12,21
7:12 9:7,16
12:24 13:13
14:14 15:8
17:9 18:9,18
20:8 21:7
22:23 23:2
24:4 29:17
32:18
**means** 18:15
30:7 32:5
**meant** 10:10
30:13,24 31:1
**measure** 8:10
8:13
**measurement**
10:11,21

**meet** 15:15
**mentioned**
26:20 31:18
**michael** 1:21
**milbank** 3:3
**mind** 19:12,20
19:21 23:11
**minimis** 23:9
29:24
**minute** 24:18
**minutes** 4:7
**mispronounced**
4:3
**model** 7:19
**money** 23:10
**morning** 15:22
**murphy** 6:10
9:12

**n**

**n** 3:2 4:1 35:2
**name** 4:12,17
**narrow** 19:23
28:5 33:16
**national** 19:8
**nationwide**
21:16
**nature** 20:21
**nearly** 11:10
**necessary** 7:2
**need** 23:2 25:22
**needs** 21:8
**negligible** 15:3
15:4

**never** 12:24
28:20 32:6
**new** 1:3 3:5,11
11:23 13:9,10
13:13,19 17:18
18:8,9 21:9,10
21:11,15,19,19
21:20 25:24
26:8 32:2,3,4,5
32:8,9,11,13,16
32:21,22
**nine** 12:25
**nj** 3:15
**north** 2:20
35:12
**note** 27:24
**noted** 17:7,9
19:18 20:23
21:7 23:6
**noticed** 6:22
**notices** 33:6
**noting** 16:5
**novo** 15:9,10
**nuclear** 31:21
**number** 4:4
24:5 29:16,16
**nw** 3:5

**o**

**o** 1:20 4:1 35:2
**obliged** 6:25
**obstacle** 32:23
**obtain** 17:25

**occur** 17:19
24:22
**offered** 17:17
**offering** 21:14
**offers** 5:11
**office** 3:11
**oh** 4:15 8:15
**okay** 4:23 5:6
15:19 22:23
27:2,15 28:11
30:17,19,20,21
30:23
**ones** 11:25 29:6
**opening** 13:1
33:3
**operation**
20:25
**operations** 2:23
31:21
**opposing** 16:6
**opposite** 24:15
**oral** 33:24
**order** 28:23
33:23
**outcome** 11:21
18:10
**outside** 5:12
6:5 9:22 17:15
23:12 28:21
32:2,4,13
**overcome** 24:1
**overlapping**
21:22

**own** 9:2 17:6
33:5

**p**

**p** 3:2,2 4:1
**page** 12:25
13:22
**parade** 10:8
17:22 29:12
**parallel** 13:21
13:21,24
**part** 6:2,14
7:14
**particular**
33:24
**parties** 8:6 9:21
14:5,19 23:13
29:21 31:14
33:23
**paspa** 6:11
9:10
**passed** 9:3
**passes** 29:16
**people** 21:11,14
21:18 22:14
**permissible**
17:18
**persons** 28:21
**phoenix** 2:21
35:13
**physically** 32:8
**pile** 12:8
**ping** 22:10

**pittsburgh**
10:20
**place**  5:12
**placing**  18:20
**plain**  16:6
**plants**  31:21
**platform**  29:14
**play**  29:23
**player**  22:7
25:21 29:15
**please**  15:23
**point**  6:20 8:22
11:2 16:14
24:3,13 29:5,9
30:2,8,10,12
31:3 32:2,10
33:2,6
**pointed**  7:25
13:25 22:24
29:6 33:2
**pointing**  10:13
**points**  28:16
29:17 32:1
**police**  11:6
**policy**  19:7
**political**  9:1
**pong**  22:10
**porter**  1:22
9:15 10:14
14:23,24 16:5
17:13 19:24
20:1 22:9
24:16 25:19
28:9 32:15

**position**  15:4
16:12 17:22
26:24 32:6
**possibly**  12:13
**posture**  14:24
**potential**  7:11
17:11 23:8
29:18
**power**  8:20 9:1
31:21
**powers**  11:6
**preeminently**
19:8
**preempt**  5:14
24:20 31:1
33:15
**preempted**
12:13 15:12
20:4 21:1
24:25 25:1,23
25:23 31:15
**preempting**
5:15 19:23
**preemption**
5:13,19,20,21
11:3,4,16,18,24
12:2,10,14,16
12:20,24 14:5
14:6,10,20,21
20:2,2,8,15,22
21:2,3 24:17
24:21 28:16
30:11,16 31:5
31:5,6,7,8,12

31:16,18,20,23
**preempts**  16:2
**preliminary**
14:25
**presumption**
11:4
**pretty**  7:12
10:2 11:15
**preventing**
26:3,4
**price**  18:21,21
**primarily**  28:3
28:4
**principle**  29:19
29:24
**principles**  29:5
29:6
**prior**  19:16
**probably**  10:23
22:6 23:17,19
**problem**  9:18
**proceed**  4:5 5:7
15:21
**proceedings**
34:4 35:5
**process**  29:23
**prohibiting**
12:22
**prohibition**  9:8
**prohibits**  9:19
32:24,25
**prong**  14:25
**pronounce**
4:11,12

**pronounced**
4:3
**pronounces**
4:16
**prop**  29:15
**props**  22:7
25:21
**protecting**
33:10
**protection**
33:11
**provided**  16:19
25:14
**provides**  16:16
**provision**  11:19
22:2 25:12
31:4
**provisions**
11:24 33:10
**public**  19:6
24:11
**pure**  15:8
**put**  15:11 18:17
23:9
**putting**  29:15

**q**

**question**  15:9
17:13 20:20
**questions**  8:24
30:9
**quite**  5:24 6:20
17:10 18:5

**quote** 12:25
  13:22 15:6

**r**

**r** 1:20 3:2 4:1
  35:2
**raffle** 22:17
**rare** 8:17 31:23
**real** 16:9 29:8
**really** 8:14
  12:14 23:3
  25:8,21 31:3
  31:12 34:1
**reason** 6:2 7:24
  8:17 10:7 14:4
  20:22
**reasonable**
  26:10
**reasons** 5:9,22
  15:13 16:4,14
  31:17
**rebuttal** 4:8
  15:20 28:12
**recognition**
  25:6 28:2
**recognized**
  24:8 25:4
**recognizing**
  19:15
**record** 35:5
**redundant**
  21:22
**refer** 27:7,12
  27:14

**reference** 29:10
**referred** 16:18
  17:2 27:18
**refers** 25:17
**reforms** 6:2
  7:15
**reg** 33:7
**regardless**
  15:10
**regime** 21:20
**register** 28:23
  33:6
**registered**
  28:24
**regulate** 6:11
  6:14 16:2 18:6
  18:12,16,19
  19:19 23:23
  27:9,23,23
  28:5 32:4 33:4
  33:5,14
**regulated** 6:4
  8:21 10:3 11:5
  11:7,8 17:19
  17:20 18:14
  26:6 33:15
**regulating** 20:5
  25:8,9,25 26:4
  26:5 33:8
**regulation** 5:16
  5:25 13:5
  19:15 21:13
  24:23 25:3,10

**regulations**
  13:21,24 33:8
**regulatory**
  16:22 26:22
  27:4
**rejecting** 31:7
**remember**
  15:25
**repeal** 9:2
  30:10
**repeatedly**
  11:11 12:12
  14:8
**reply** 26:25
**report** 31:13
**require** 9:6
**requirement**
  17:1
**requirements**
  21:17,23
**requires** 16:13
  21:11
**reserve** 4:7
**residents** 13:19
  32:9
**respect** 18:4
  23:9 24:11
**respects** 21:5
**responses** 7:4
**responsibilities**
  16:24
**rest** 17:5
**restrict** 16:23

**restricting**
  32:11
**restrictions**
  14:3
**result** 21:4,24
  23:23 26:14,15
  33:3
**revenue** 10:7
  10:19,21
**reverse** 5:10,22
  33:21
**review** 15:10
  24:10
**revising** 19:16
**revolve** 14:6
**richard** 3:14
**richards** 1:23
**right** 4:20,23
  4:24,24 5:3,6
  8:3 9:17,25
  10:1 14:18,18
  14:22 15:2
  18:12 20:17
  21:20 22:21,22
  22:24 24:12
  25:11,11 27:5
  27:12 28:6
  32:21
**rigidly** 20:9
**rise** 8:1 18:21
  18:21
**risking** 18:10
**risks** 33:10

**room** 24:23
**roth** 1:23 15:16
  15:18 28:9,10
**rule** 5:10 8:19
  10:19,22 12:6
  13:4 24:6,7,12
**ruled** 20:15
**rules** 8:18
  10:12 11:2
  30:8
**running** 30:11

**s**

**s** 3:2 4:1
**savings** 12:2
  16:17,17,25
**saying** 7:2 15:3
  25:22 29:17
  31:12 32:4,15
  32:17,18
**says** 11:17 13:5
  14:19 16:18
  19:5 20:8
**scenario** 10:25
**scenarios** 6:6
**scheme** 11:14
  31:19,22
**scope** 17:4 20:3
**score** 29:16
**scrutiny** 24:9
**sea** 5:25 6:3
  33:13
**second** 5:13
  27:18 30:2

**section** 16:15
  16:21 17:1,5
  25:16 28:21,22
**security** 13:23
**see** 10:4 13:24
  20:11 28:18
  29:5,14 30:11
  33:5
**seem** 6:21
**seems** 6:19
  24:18
**seen** 23:2
**senator** 19:18
**sense** 9:8 26:1
**sensible** 23:23
  26:14
**separate** 30:13
  30:25
**september** 1:17
  35:15
**settled** 19:5
**seven** 6:13
**seventh** 14:17
  20:7,10,23,24
  31:2
**shoot** 4:15
**short** 30:11
**shorthand** 8:14
**show** 15:1 24:1
**sic** 4:2
**side** 4:16 6:21
  7:6 24:19
  28:18

**significantly**
  15:2,4
**similar** 7:17
  17:13
**simply** 5:24
  17:24
**sin** 19:8
**single** 31:4
**slow** 30:22
**smoking** 7:9
  8:1
**sorry** 4:15,24
  5:7 14:11
**sort** 7:17 8:14
  21:4 22:16,17
  22:18 23:20,25
  24:5,14 25:24
  25:25 28:2
  31:19
**sorts** 32:23
**sounds** 18:23
**special** 10:18
  10:22 12:6
  13:4 24:6,6,12
**species** 19:7
**specific** 21:5
  23:4 27:9
  33:10
**specifically**
  5:14 9:20 19:1
  26:22
**split** 33:24
**sporting** 29:10

**sports** 9:11,17
  10:14,23 11:21
  13:2 14:7
  17:14,17,23
  18:4 22:4
  25:20 30:5,5
  33:16
**sportsbooks**
  6:7 17:3,6,17
  26:4
**sporttrade**
  32:20
**staking** 18:10
**standard** 5:20
  15:6,14
**start** 5:23
**state** 4:13 5:10
  5:14 8:20,21
  9:4 11:10,11
  11:13,14 12:4
  12:7,10,12,23
  13:7,21 15:12
  16:23,23 17:6
  17:19,20 19:14
  19:23 20:24
  21:13,15,20
  24:20,23 25:6
  25:15,17 26:4
  26:7,10,12
  27:8 31:14
  32:14,25 33:15
**state's** 5:16
**statement** 8:19
  9:1,6 10:12

11:2 30:8
**statements**
9:14
**states** 1:2,14
6:11,14 8:22
8:23 11:5 17:3
17:5 18:24,25
19:18 21:21
23:23 25:14
26:5,8,19 27:8
27:22 28:4
**statute** 6:25 8:4
16:13 19:17
24:14 26:11
27:16,18,18
28:20 29:4
32:5,7
**statutes** 9:2
11:12 19:1
27:6,7
**statutory** 8:18
15:25 16:6
17:8 23:20
24:1 30:6 31:4
**steelers** 10:20
22:25
**stephen** 3:17
4:6
**street** 2:20 3:13
35:12
**strong** 11:15
12:1
**strongly** 11:7

**struck** 6:10
**structure** 9:19
**stuff** 23:19
**subclause** 8:6
**subclauses** 8:5
8:9
**subject** 14:2
18:14 21:13,16
23:22 24:9
26:10
**subjected**
21:25
**subjecting** 17:3
17:6
**subsequent**
25:5,13
**subsidiary** 32:1
**substantive**
31:14
**success** 15:7
**sufficient** 5:9
22:7
**suggest** 6:23
27:8
**suggestion** 6:23
**suite** 2:20
35:12
**super** 10:6
22:24,25 29:12
**supersede**
16:21
**supported**
26:24

**supposed** 31:4
**supreme** 5:17
6:10 9:12
11:12,17,25
19:4,4,9
**sure** 12:19 17:4
23:8 27:1
28:14
**surely** 11:18
**swap** 5:11 6:1
7:16 10:2,21
10:24 16:9
17:9 22:5,19
25:20 28:16,17
29:22 30:2
**swaps** 5:24 6:3
6:20 9:20,20
10:15,18 15:11
16:10 17:2
28:21,23 30:4
**sweep** 7:14

**t**

**t** 35:2,2
**take** 27:1 32:2
32:18 33:25
**taken** 25:24
32:6
**talk** 10:5 11:3
12:3 24:18
29:24
**talking** 9:16,20
15:13 29:2,12

**talks** 28:22
**target** 19:1
**teams** 29:16
**technology**
32:20
**tell** 32:16
**tells** 11:12,25
31:23
**terms** 20:8 21:2
21:3
**text** 7:5 16:7
24:2,12 26:15
30:3,7
**thank** 4:6,10
5:3,6,8 15:18
15:19 28:6,7
28:10,11,11,13
30:21 33:22,22
33:22 34:1
**theories** 33:19
**thing** 4:25 10:8
12:23 18:20
26:12 33:1
**things** 6:21
7:14 8:1 10:6,8
10:19,23 11:6
12:7,8,9,10
13:15,19,25
15:5 19:21
21:11 23:4
24:5 26:7
29:17 32:23
**think** 6:8,9,14
7:4,5,16,22

8:16 9:5 10:4,9
10:20 11:1
14:5,6,13,14,14
14:16,16 15:6
15:6,8,14 16:3
16:4 17:20
18:1 20:6,12
20:14,17,18,19
21:1,3,3,5,7
22:6,13,17
23:5,24 25:3
26:9,11,14,21
28:17 29:13,25
31:17 32:10
**thinks** 25:24
**third** 1:2,14,24
5:20
**thought** 4:18
23:17 32:15
**three** 4:7,10 5:8
8:18 9:14
28:16 30:8
**time** 5:16 6:19
9:3,3,3,10
13:20,24 30:11
30:18 33:20
**today** 34:2
**together** 8:2
**top** 11:9 12:2,9
**total** 19:19
**touches** 25:2
**trade** 6:5 27:19
28:21,25

**traded** 6:3 9:21
9:22 16:10,11
17:2
**trades** 26:6
**trading** 9:19
14:1,15 16:1,2
16:20 19:1,10
19:13,25 20:5
20:25 25:3,8
26:18 27:10
**transaction**
25:2
**transactions**
9:16 11:20
16:17 23:18
25:1
**transcribed**
2:18
**transcript**
33:23 35:4
**trenton** 3:15
**tried** 18:24,24
**trigger** 10:18
**true** 7:18 14:16
24:15 26:12
28:4 29:8 35:5
**try** 31:19
**trying** 6:9 7:14
**turn** 27:1,7
**two** 15:5 17:1,5
22:14,14 28:16
32:1
**type** 5:14

| u |
|---|

**u.s.** 1:24
**uh** 6:17
**uigea** 27:17,24
28:2
**under** 13:6,7
14:3 15:14
16:11,22 17:20
25:16 29:22
33:25
**underlying**
18:22
**understand**
6:20 16:9 18:2
18:13 20:9
25:22,24 26:2
**understood**
18:20 19:2,10
27:21
**undesirable**
6:21
**united** 1:2,14
**unlawful** 26:23
**unlimited** 7:16
**unprecedented**
31:10
**upend** 9:6
**upending** 33:18
**use** 10:5 30:6
31:13
**used** 8:13 16:20
17:10 23:6

**usual** 12:5

| v |
|---|

**v** 1:9
**value** 18:10,20
**various** 7:14
**vast** 8:25
**version** 19:16
**versus** 4:3
31:22
**vest** 15:24
**view** 10:2 15:9
16:12 18:6
26:7 29:5
**violate** 28:25
**void** 19:6
**vote** 22:11
**voting** 22:11

| w |
|---|

**wager** 27:11,12
27:17,19
**wait** 32:7
**wake** 28:1,2
**want** 13:2,9
16:12 18:1
21:9
**wanted** 11:19
21:24 22:1
24:7 30:14
**washington** 3:6
**way** 8:18 11:2
11:17,22 12:13
13:14 23:16,16
29:21 30:4

| | |
|---|---|
| **ways** 32:19,22 | **y** |
| **we've** 11:8 | **yeah** 4:16 7:4 |
| 15:13 32:6 | 7:13 22:13 |
| **website** 23:3 | 23:5 24:16 |
| **went** 26:16 | **years** 6:13 11:8 |
| **willfully** 28:25 | 18:25 27:25 |
| **william** 3:8 | **york** 1:3 3:5 |
| **win** 15:1 22:25 | |
| **winning** 10:5 | |
| 29:12 | |
| **wire** 9:7 | |
| **witnesses** 19:16 | |
| **woefully** 33:4 | |
| **wondering** | |
| 24:21 | |
| **word** 6:1 | |
| **words** 7:6 | |
| **work** 15:12 | |
| **works** 28:20 | |
| 29:4 | |
| **world** 10:8 | |
| 21:13 22:16 | |
| 23:17 29:8 | |
| **worry** 28:18 | |
| 29:3 | |
| **wrong** 24:22 | |
| **wyeth** 5:18 | |
| 11:13,17 | |
| **x** | |
| **x** 1:4,12 4:24 | |
| 4:25 | |

New York Code

Civil Practice Law and Rules

Article 31 Disclosure, Section 3116

(a) Signing. The deposition shall be submitted to
the witness for examination and shall be read to or
by him or her, and any changes in form or substance
which the witness desires to make shall be entered
at the end of the deposition with a statement of
the reasons given by the witness for making them.
The deposition shall then be signed by the witness
before any officer authorized to administer an
oath. If the witness fails to sign and return the
deposition within sixty days, it may be used as
fully as though signed. No changes to the
transcript may be made by the witness more than
sixty days after submission to the witness for
examination.

DISCLAIMER:  THE FOREGOING CIVIL PROCEDURE RULES
ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY.
THE ABOVE RULES ARE CURRENT AS OF APRIL 1,
2019.  PLEASE REFER TO THE APPLICABLE STATE RULES
OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored

in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.

## CERTIFICATION OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system on September 24, 2025.

I hereby certify that I caused three copies of the foregoing to be sent via Overnight mail to the Clerk's Office of the United States Court of Appeals for the Third Circuit at 21400 United States Courthouse, 601 Market Street, Philadelphia, PA 19106-1790.

*/s/ Liza B. Fleming*
Liza B. Fleming
Deputy Attorney General

Dated: September 24, 2025