

**WILL HAVEMANN**
*Partner*
1101 New York Ave., N.W.  |  Washington, DC 20005
T: +1 (202) 835-7518
whavemann@milbank.com  |  milbank.com

October 16, 2025

**By Electronic Filing**

Patricia S. Dodszuweit
Clerk of Court
U.S. Court of Appeals for the Third Circuit
21400 United States Courthouse
601 Market Street
Philadelphia, PA 19106-1790

      Re:    *KalshiEX LLC v. Mary Jo Flaherty, et al.*, No. 25-1922
             FRAP 28(j) Letter Response

Dear Ms. Dodszuweit:

      The court in *Nadex* reaffirmed that the CEA's "plain and unambiguous language" preempts state regulation of swaps traded on DCMs. Op.10. That conclusion contravenes Defendants' argument that there is no preemption "[e]ven assuming Kalshi is offering 'swaps'" under the CEA. Br.26.

      For numerous reasons, *Nadex*'s further holding—that event contracts that "turn on the outcome" of an "event" are not swaps, Op.15—is wrong.

- An outcome is an "event or contingency." *See Event*, Oxford English Dictionary (3d ed. 2010) ("event" includes a "thing that happens or takes place"); *Contingency*, Merriam-Webster's Collegiate Dictionary (11th ed. 2003) ("contingency" includes "something liable to happen as an adjunct to or result of something else"). Indeed, many dictionaries define "event" as "outcome." *See* Op.13n.6.

- The CFTC has recognized that event contracts—a type of "swap[]" §7a-2(c)(5)(C)(i)—turn on "the *outcome* of an underlying occurrence or event." 89 Fed. Reg. 48968, 48,969 (2024); *see* 73 Fed. Reg. 25,669, 25,669 (2008) ("event contracts" are based on "the *outcome*" of events).

- *Nadex* maintained that interpreting swaps to include outcomes "would render superfluous other portions of the CEA's definition" of swap. Op.16. But that is true even of

MILBANK LLP

NEW YORK  |  LOS ANGELES  |  WASHINGTON, D.C.  |  SÃO PAULO  |  FRANKFURT
LONDON  |  MUNICH  |  HONG KONG  |  SEOUL  |  SINGAPORE  |  TOKYO

- Defendants' (extratextual) definition, which would render superfluous many "inherently" financial swaps enumerated in the CEA, like "total return" swaps. §1a(47)(A)(iii)(IX).

- *Nadex* erred in concluding that a contrary interpretation "would mean that all sports wagering must be done on a DCM." Op.17. Section 2(a) preserves the jurisdiction of "other regulatory authorities" under the laws "of any State," "[e]xcept" for the CFTC's exclusive jurisdiction over *on-DCM* trading. And the CEA does *not* "supersede or preempt" the application of state law to *off-DCM* trading. §16(e)(1).

- *Nadex*'s holding would create intractable problems. Many quintessential swaps could be framed as turning on outcomes; almost *any* event is the outcome of another event. The rise in corn prices underlying a swap could be reframed as the *outcome* of a drought. The default underlying a credit-default swap could be reframed as the *outcome* of a downturn. The CFTC's exclusive jurisdiction does not turn on this purely semantic distinction.

Respectfully submitted,

/s/ William E. Havemann
William E. Havemann

*Counsel for Appellee KalshiEX LLC*


cc:   All Counsel (via ECF)
Word Count: 343