

**WILL HAVEMANN**
*Partner*
1101 New York Ave., N.W.　|　Washington, DC 20005
T: +1 (202) 835-7518
whavemann@milbank.com　|　milbank.com

November 12, 2025

**By Electronic Filing**

Patricia S. Dodszuweit
Clerk of Court
U.S. Court of Appeals for the Third Circuit
21400 United States Courthouse
601 Market Street
Philadelphia, PA 19106-1790

   Re: *KalshiEX LLC v. Mary Jo Flaherty, et al.*, No. 25-1922
      FRAP 28(j) Letter

Dear Ms. Dodszuweit:

  Kalshi writes to advise the Court of *Blue Lake Rancheria v. Kalshi Inc.*, No. 3:25-cv-6162 (N.D. Cal. Nov. 10, 2025), in which the Northern District of California denied certain Indian tribes' effort under the Indian Gaming Regulatory Act ("IGRA") to preliminarily enjoin Kalshi's sports-event contracts. The court held that "the Unlawful Internet Gaming Enforcement Act ('UIGEA') and the Commodity Exchange Act, and not IGRA, govern Kalshi's event contracts," Op.2, and that Kalshi's contracts are "not bets or wagers" under UIGEA because they are traded on a DCM, Op.10. *Blue Lake Rancheria* undermines Appellants' arguments in at least two ways.

  First, *Blue Lake Rancheria* undermines Defendants' assertion that finding preemption in this case would "impliedly repeal[ ]" IGRA and other federal statutes regulating gambling. Defs.' Br.20. As *Blue Lake Rancheria* explains, IGRA governs gaming on Indian lands, but the CEA governs DCM transactions, and UIGEA governs "internet gambling"—a term UIGEA expressly defines to exclude DCM transactions. Op.9-10. Because IGRA, UIGEA, and the CEA "are capable of co-existence," the Court's "duty" is "to regard each as effective." Op.9 (quoting *Traynor v. Turnage*, 485 U.S. 535, 548 (1988)). As Kalshi explained in its response brief (at 42-44), the same is true of the other federal statutes Defendants cite.

  Second, *Blue Lake Rancheria* undermines Defendants' assertion that Kalshi has offered its contracts "in direct contravention of federal law." Defs.' Br.49. The court explained that the CFTC has "exclusive jurisdiction" over DCMs, Op.12 (quoting 7 U.S.C. §§ 2(a)(1)(A), (C)(ii)), that "only" the CFTC may determine whether an event contract should be subject to a 90-day public-interest review, Op.12 (citing 17 C.F.R. § 40.11(c)), and that the "policy issues" raised by

MILBANK LLP

NEW YORK | LOS ANGELES | WASHINGTON, D.C. | SÃO PAULO | FRANKFURT
LONDON | MUNICH | HONG KONG | SEOUL | SINGAPORE | TOKYO

plaintiffs were properly directed to "the [CFTC] and Congress" and were "beyond the jurisdiction of this court." Op.12 (quoting *KalshiEX, LLC v. Hendrick*, 2025 WL 1073495, at *8 (D. Nev. Apr. 9, 2025)). The same reasoning precludes Defendants' efforts here to second-guess the CFTC's decision to allow Kalshi's contracts.

Respectfully submitted,

/s/ William E. Havemann
William E. Havemann

*Counsel for Appellee KalshiEX LLC*

cc:　　All Counsel (via ECF)
Word Count: 324

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLUE LAKE RANCHERIA, et al.,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>KALSHI INC., et al.,<br><br>　　　　　Defendants. | Case No. 25-cv-06162-JSC<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 35 |

Plaintiffs allege Defendants are unlawfully offering and advertising Class III gaming on federally recognized tribal lands through the Kalshi app. Plaintiffs are three federally recognized tribes whose reservations are in California: Blue Lake Rancheria ("Blue Lake"), Chicken Ranch Rancheria of Me-Wuk Indians ("Chicken Ranch"), and Picayune Rancheria of the Chukchansi Indians ("Picayune Rancheria"). Defendant KalshiEx LLC ("Kalshi") partners with Robinhood Derivatives, LLC, and Robinhood Markets, Inc. (together, the "Robinhood Defendants") to operate a nationwide, federally registered, internet-based exchange with "event contracts" wherein users can enter transactions that are based on the occurrence of real-world events such as elections and sports matches. Plaintiffs bring claims under the Indian Gaming Regulatory Act ("IGRA") and the Lanham Act, as well as five claims that are not the subject of the instant motion.

Now pending before the Court is Plaintiffs' motion for a preliminary injunction. As to the IGRA claim, Plaintiffs seek to enjoin Kalshi "from offering on the Tribes' Indian lands contracts that take the form of a binary 'yes/no' event contract that pose the following questions:

1. 'Will <team> win <title>?'
2. 'Will <team> win <event>?'"

(Dkt. No. 35 at 2.)[1] As to the Lanham Act claim, Plaintiffs request an injunction preventing Kalshi "from marketing its sports contracts as 'legal in all 50 states' or any variation of that phrase or similar representation regarding the nationwide legality of these gaming contracts." (Dkt. No. 35 at 2.) For the reasons set forth below, the Court **DENIES** Plaintiff's motion. Plaintiffs have not shown a likelihood of success on the merits for either claim.

## DISCUSSION

A party seeking a preliminary injunction must establish "(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

Here, Plaintiffs have not shown a likelihood of success on the merits on either claim. First, under the Lanham Act, Plaintiffs have not identified a false or misleading advertisement. Second, Plaintiffs' IGRA claim fails because the Unlawful Internet Gambling Enforcement Act ("UIGEA") and the Commodity Exchange Act, and not IGRA, govern Kalshi's event contracts, and the Court does not have jurisdiction to decide whether the event contracts violate the Commodity Exchange Act.

### I.  Lanham Act Claim

"The Lanham Act creates a cause of action for unfair competition through misleading advertising or labeling. Though in the end consumers also benefit from the Act's proper enforcement, the cause of action is for competitors, not consumers." *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 107 (2014). A violation of the Lanham Act requires:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product;
> (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience;
> (3) the deception is material, in that it is likely to influence the purchasing decision;
> (4) the defendant caused its false statement to enter interstate commerce; and
> (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by lessening of the goodwill

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

2

associated with its products.

*AECOM Energy & Constr., Inc. v. Morrison Knudsen Corp.*, 748 F. App'x 115, 118 (9th Cir. 2018). To have standing under the Lanham Act, Plaintiffs "must show: (1) a commercial injury based upon a misrepresentation about a product; and (2) that the injury is 'competitive,' or harmful to Plaintiff[s'] ability to compete with [Kalshi]." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 826 (9th Cir. 2011).

"To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (citing *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 943, 946 (3d Cir. 1993)). "Only an unambiguous message, however, can be literally false," meaning "if the graphic is susceptible to more than one reasonable interpretation, the advertisement cannot be literally false." *Suzie's Brewery Company v. Anheuser-Bush Companies, LLC*, 519 F. Supp. 3d 839, 846 (D. Or. 2021) (citing *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007)). "When evaluating whether an advertising claim is literally false, the claim must always be analyzed in its full context." *Southland*, 108 F.3d at 1139 (citing *Castrol*, 987 F.2d at 946).

Plaintiffs argue two of Kalshi's advertisements violate the Lanham Act. First, Kalshi advertises "Sports Betting [is] Legal in all 50 States on Kalshi." (Dkt. No. 1 at 59; Dkt. No. 35 at 13 n.2; Dkt. No. 35-22 at 2.) Plaintiffs contend this statement is "literally or facially false" due to federal and state prohibitions on sports gambling. (*Id.* at 20-21.) Second, Plaintiffs identify a Kalshisports social media post saying "Really hope kids in high school still do this," with a photo of four screens playing basketball games. (Dkt. No. 35-38 at 2.) A Kalshisports reply to this post says "Bet on March Madness in all 50 states" followed by a URL. (*Id.*) Plaintiffs argue these posts "necessarily imply" people under 18 can gamble on sports, which is false. (Dkt. No. 35 at 22 (citing *Southland*, 108 F.3d at 1139).)

### A. "Sports Betting [is] Legal in all 50 States"

Plaintiffs have not shown a likelihood of success on the merits regarding Kalshi's first

3

advertisement because it is not "literally or facially false" to advertise "Sports Betting [is] Legal in all 50 States on Kalshi" or variations of that representation. (Dkt. No. 1 at 59; Dkt. No. 35 at 13 n.2; Dkt. No. 35-22 at 2.) "Statements of opinion are generally not actionable under the Lanham Act." *Coastal Abstract Service, Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999). Kalshi's advertisement is merely stating an opinion its product is legal, and given multiple courts have agreed with it, Plaintiffs have not shown the opinion is literally false or that Kalshi lacks a good-faith belief in the opinion's truth. *See KalshiEx, LLC v. Hendrick*, 2025 WL 1073495 *8 (D. Nev. Apr. 9, 2025) (declining to enjoin Kalshi's event contracts to "preserve the status quo, which is that [Kalshi's] contracts are legal under federal law"); *KalshiEx, LLC v. Flaherty*, 2025 WL 1218313 *8 (D. N.J. Apr. 28, 2025) (granting Kalshi's motion for a preliminary injunction to enjoin state regulation of its sports-related event contracts); *see also Coastal Abstract*, 173 F.3d at 731 ("Absent a clear and unambiguous ruling from a court or agency of competent jurisdiction, statements by laypersons that purport to interpret the meaning of a statute or regulation are opinion statements, and not statements of fact.")

### B. "Kids in High School"

Similarly, Plaintiffs have not shown a likelihood of success on the merits regarding Kalshi's second advertisement regarding "kids in high school." (Dkt. No. 35-38 at 2.) First, the advertisement is not false by necessary implication because it does not "necessarily imply" the message minors can bet on Kalshi's apps because the photos do not depict gambling. (*See id.*) If anything, "the graphic is susceptible to" a different interpretation, namely, the author hopes high schoolers watch basketball. *See Suzie's Brewery*, 519 F.Supp.3d at 846.

Second, Plaintiffs have not alleged their statutory standing to challenge the post even if it did necessarily imply kids under 18 can gamble. Plaintiffs contend "Kalshi is directly competing for the same gaming market, patrons, and gaming dollars that would have been spent in the Tribe's facility." (Dkt. No. 35-6 ¶ 41.) However, Plaintiffs have not shown a likelihood of success on its claim the "kids in high school" post caused a competitive injury because neither Plaintiffs nor Kalshi allow patrons under 18 years of age to gamble. (*See* Dkt. No. 44-3; Dkt. No. 44 at 27 n.9.) At the hearing, Plaintiffs suggested Kalshi's advertising is targeting the market for

4

young, soon-to-be gamblers, but Plaintiffs have not offered evidence or even complaint allegations in support of this theory; Plaintiffs' only evidence of harm and direct competition is (1) declarants were able to use the Kalshi app while within the jurisdiction of the Tribes, and (2) the claim "[c]asino staff have observed casino patriots betting on the Kalshi app while in the casino." (*See, e.g.*, Dkt. No. 35-2 ¶ 16; Dkt. No. 35-6 ¶ 40.)

Accordingly, Plaintiffs have not shown a likelihood of succeeding on the Lanham Act claim, so the Court DENIES Plaintiffs' motion as to that claim.

## II. IGRA Claim

### A. IGRA's Statutory Background

Congress enacted the Johnson Act in 1951 to prohibit the "possess[ion] or use of any gambling device … within Indian country." 15 U.S.C. § 1175. In the years that followed, states began regulating gaming activity on tribal lands. *See Chicken Ranch Rancheria of Me-Wuk Indians v. California*, 42 F.4th 1024, 1031–32 (9th Cir. 2022) (discussing California's attempt to regulate bingo halls on tribal lands, which culminated in the Supreme Court's decision in *California v. Cabazon Band of Mission Indians*, 480 U.S. 202 (1987)). In response, Congress enacted IGRA in 1988 to provide a uniform framework for regulating gaming activity on Indian lands and "to strike a delicate balance between the sovereignty of states and federally recognized Native American tribes." *Pauma Band of Luiseno Mission Indians v. California*, 813 F.3d 1155, 1160 (9th Cir. 2015). "The Act was passed in order to provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments and to shield [tribal gaming] from organized crime and other corrupting influences to ensure that the Indian tribe is the primary beneficiary of the gaming operation." *Id.* (cleaned up). "IGRA is an example of 'cooperative federalism' in that it seeks to balance the competing sovereign interests of the federal government, state governments, and Indian tribes, by giving each a role in the regulatory scheme." *In re Indian Gaming Related Cases*, 331 F.3d 1094, 1096 (9th Cir. 2003) (quoting *Artichoke Joe's v. Norton*, 216 F. Supp. 2d 1084, 1092 (2002)).

As relevant here, IGRA regulates "Class III gaming activities," *i.e.*, "the types of high-

stakes games usually associated with Nevada-style gambling." *In re Indian Gaming*, 331 F.3d at 1097. IGRA provides "Class III gaming activities shall be lawful on Indian lands only if such activities are" authorized by a tribal ordinance or resolution, located in a state where such activities are legal, and conducted in conformance with a Tribal-State compact. 25 U.S.C. 2710(d)(1). IGRA also exempts from the Johnson Act "gaming conducted under a Tribal-State compact that is … entered into by a state in which gambling devices are legal." 25 U.S.C. 2710(d)(6).

### B. UIGEA's Statutory Background

"The UIGEA was passed to regulate online gambling." *State of California v. Iipay Nation of Santa Ysabel*, 898 F.3d 960, 964 (9th Cir. 2018). Congress enacted the UIGEA to address a patchwork of state laws regulating online gambling in the advent of the internet. *See id.* at 965. The UIGEA makes it unlawful to engage in "unlawful Internet gambling," which means:

> to place, receive or otherwise knowingly transmit a bet or wager by any means which involves the use … of the Internet where such bet or wager is unlawful under any applicable Federal or State law in the State or Tribal lands in which the bet or wager is initiated, received, or otherwise made.

31 U.S.C. § 5362(10)(A). So, "[u]nlike IGRA or other gambling regulations, the UIGEA does not make gambling legal or illegal directly." *Iipay Nation*, 898 F.3d at 965. Instead, the UIGEA "create[s] a system in which a 'bet or wager' must be legal both where it is 'initiated' and where it is 'received.'" *Id.* As the Ninth Circuit has explained:

> This requirement makes sense in light of how the internet operates. If a bet merely had to be legal where it was received, a bettor could place an illegal bet (on a game of poker, for instance) from anywhere in the United States, so long as the bet was legal in the jurisdiction hosting the servers for a game (Las Vegas or Atlantic City, for instance, in the case of online poker). In effect, the UIGEA prevents using the internet to circumvent existing state and federal gambling laws, but it does not create any additional substantive prohibitions.

*Id.*

Significantly, the UIGEA excludes from its definition of "bet or wager" several types of transactions. For example, the UIGEA does not prohibit "intrastate transactions"–that is, transactions where "the bet or wager is initiated and received or otherwise made exclusively

6

within a single State," gambling is legal in the state, and "the bet or wager does not violate any provision of" four statutes, one of which is IGRA. 31 U.S.C. § 5362(10)(B). Using nearly identical language, the UIGEA exempts "intratribal transactions" where the "bet or wager is initiated or otherwise made exclusively … within the Indian lands" of tribes that have authorized gaming in accordance with IGRA. 31 U.S.C. § 5362(10)(C). Finally, "the term 'bet or wager' does not include any transaction conducted on or subject to the rules of a registered entity or exempt board of trade under the Commodity Exchange Act." 31 U.S.C. § 5362(1)(E)(ii) (cleaned up).

### C. Likelihood of Success

Plaintiffs contend Defendants are offering Class III gaming in violation of IGRA. As relevant here, IGRA provides district courts with jurisdiction over:

> (ii) any cause of action initiated by a State or Indian tribe to enjoin a class III gaming activity located on Indian lands and conducted in violation of any Tribal-State compact entered into under paragraph (3) that is in effect, and
> (iii) any cause of action initiated by the Secretary to enforce the procedures prescribed under subparagraph (B)(vii).

25 U.S.C. §§ 2710(d)(7)(A)(ii), (iii). So, the Court has jurisdiction over the IGRA claim only if Plaintiffs are seeking to enjoin "class III gaming activity located on Indian lands and conducted in violation of any Tribal-State compact" that is in effect. 25 U.S.C. §§ 2710(d)(7)(A)(ii). Plaintiffs have not shown a likelihood of success on this jurisdictional requirement.

Although Plaintiff Picayune Rancheria's compact "remains in effect today," (Dkt. No. 35-2 ¶¶ 7–10), Plaintiffs Blue Lake and Chicken Ranch do not have a "Tribal State compact … that is in effect" because the Secretary of the Interior issued procedures governing Class III gaming "pursuant to IGRA's remedial scheme," a scheme triggered by the absence of a compact. (Dkt. No. 35-5 ¶ 23; Dkt. No. 35-6 ¶ 26); *see* 25 U.S.C. § 2710(d)(7)(B) (outlining the remedial scheme). So, Blue Lake and Chicken Ranch conduct Class III gaming pursuant to secretarial procedures, rather than a Tribal-State compact. The Court nonetheless has jurisdiction to entertain claims brought for violations of secretarial procedures because the procedures are "functionally equivalent" to compacts under IGRA. *Stand Up for California! v. U.S. Dep't of the Interior*, 959 F.3d 1154, 1160 (9th Cir. 2020).

7

Defendants' insistence *Stand Up* applies only in the context of § 2710(d)(1), but not in the context of § 2710(d)(7)(A)(ii), is unpersuasive for two reasons. First, *Stand Up* reasoned the compacts are equivalent to secretarial procedures for purposes of Sections 2710(d)(1) and 2710(d)(6) because there is a "presumption that a given term is used to mean the same thing throughout a statute." *Id.* (citing *Brown v. Gardner*, 513 U.S. 115, 118 (1994)). So, the Court must presume compacts are equivalent to secretarial procedures in § 2710(d)(7), which immediately follows a subsection *Stand Up* addressed. *See id.*; 25 U.S.C. §§ 2710(d)(6), (d)(7). Second, Defendants' interpretation of Section 2710(d)(7)(A) "robs IGRA's remedial scheme, which relies on Secretarial Procedures to ensure good-faith negotiation by states, of its force." *Stand Up*, 959 F.3d at 1160. Under Defendants' reading, Tribes would lose the ability to enjoin unlawful Class III activity on their lands whenever a state refuses to negotiate a new compact in good faith–a situation over which Tribes have no control. As *Stand Up* warned, "such an incomplete remedy would create only feeble and ineffective incentives for states to negotiate in good faith." *Id.* at 1160. Like the Ninth Circuit, the Court "do[es] not believe that Congress intended such a result that would permit a state to be hostile to Indian tribes." *Id.* at 1161.

So, the Court has jurisdiction over Plaintiffs' IGRA cause of action if they are seeking to enjoin activity "conducted on Indian lands" and in violation Plaintiffs' compact or secretarial procedures within the meaning of subsection (d)(7)(A)(ii). But Plaintiffs have not established it is likely the Court has such jurisdiction.

First, Picayune Rancheria has not shown a likelihood of success on its claim that Kalshi's contracts are in violation of its Tribal-State compact. Plaintiffs contend "Section 4.1(c) of the Tribe's 1999 Compact specifically prohibits internet gaming activities such as those being conducted by Kalshi." (Dkt. No. 35-2 ¶ 13.) Not so. Section 4.1(c) is silent about what companies like Defendants can do on the internet, and only outlines what "[t]he Tribe" is "authorized and permitted to operate." (Dkt. No. 44-3 at 13.) Specifically, "the Tribe will not offer [certain] games through use of the Internet unless others in the state are permitted to do so." (Dkt. No. 44-3 at 13.) Second, Blue Lake's and Chicken Ranch's secretarial procedures have the same language, and thus do not mention what companies like Kalshi can do on the internet. (Dkt.

8

No. 35 at 25 n.11, 12.)[2] Plaintiffs urge the prohibitions in the compact and procedures do not mention third parties like Kalshi because under IGRA, "the Tribe is the only entity authorized to conduct class III gaming on its lands. There would be no reason to prohibit third parties from internet gaming on tribal lands." (Dkt. No. 56 at 3.) Maybe, but that does not mean the compact or secretarial procedures prohibit Defendants' conduct.

Plaintiffs also have not shown a likelihood of succeeding on its IGRA claim for an additional reason: a later enacted, more specific statute—the UIGEA—governs Kalshi's contracts. The UIGEA, unlike IGRA, expressly addresses internet gaming that can be accessed in locations where such gaming is unlawful, *including Indian lands*. 31 U.S.C. § 5362(10) (defining "unlawful Internet gambling" to mean placing, receiving, or transmitting a bet or wager via the internet "where such bet or wager is unlawful under any applicable . . . law in the State or Tribal lands"); *see also Iipay Nation*, 898 F.3d at 965 ("In effect, the UIGEA prevents using the internet to circumvent existing state and federal gambling laws[.]"). IGRA does not address this scenario, which is unsurprising given "Congress passed IGRA in 1988—a few years before the internet became publicly available. … [T]he statute nowhere referenced the internet, or other networking capabilities that reach beyond Indian lands." *Iipay Nation*, 898 F.3d at 964 n.6; *see also Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 795 (2014) ("Everything—literally everything—in IGRA affords tools (for either state or federal officials) to regulate gaming on Indian lands, and nowhere else.").

"[W]hen two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Traynor v. Turnage*, 485 U.S. 535, 548 (1988) (internal quotation marks omitted). Accordingly, the UIGEA should be interpreted to apply to cover interstate (or state-to-Indian-lands and vice versa) gaming

---

[2] Class III Gaming Secretarial Procedures for The Blue Lake Rancheria, California, Bureau of Indian Affairs (Jan. 31, 2024), https://www.bia.gov/sites/default/files/dup/assets/asia/oig/pdf/508_compliant_2024.01.31_blue_lake_rancheria_secretarial_procedures.pdf; Class III Gaming Secretarial Procedures for The Chicken Ranch Rancheria of Me-Wuk Indians of California, Bureau of Indian Affairs (Jan. 31, 2024), https://www.bia.gov/sites/default/files/dup/assets/asia/oig/pdf/508_compliant_2024.01.31_chicken_ranch_rancheria_secretarial_procedures.pdf.

9

transactions via the internet, whereas IGRA should be interpreted to cover Class III gaming activities that take place exclusively within Tribal lands. The UIGEA contemplates this delineation. *See* 31 U.S.C. §§ 5362(10)(C)(i)(I) (exempting "intratribal transactions … made exclusively" within tribal lands, among other criteria); 5362(10)(B)(i)(I) (exempting "intrastate transactions" that meet similar criteria and do not violate IGRA). So, the UIGEA, not IGRA, governs the challenged internet gambling.

While the UIGEA governs the conduct, the phrase "bet or wager" expressly "does not include any transaction conducted on or subject to the rules of a registered entity or exempt board of trade under the Commodity Exchange Act" or "any other transaction that is excluded or exempt from regulation under the Commodity Exchange Act." *Id.* §§ 5362(1)(E)(i), (iv)(I). Plaintiffs do not dispute Kalshi is a "registered entity" under the Commodity Exchange Act or that Kalshi's contracts are "transactions conducted on" Kalshi. (Dkt. No. 56 at 5-6.) Since it is undisputed Kalshi is a registered entity under the Commodity Exchange Act, and that its transactions are conducted on the Kalshi internet site, its internet contracts are not bets or wagers under the UIGEA and therefore do not constitute "unlawful internet gambling" even if the contracts are received, placed or transmitted from persons on Indian lands where internet gambling is illegal.

Plaintiffs' citation to UIGEA and Commodity Exchange Act language and history to argue these statutes do not "control or displace IGRA" (Dkt. No. 56 at 5) is unavailing. They first cite UIGEA Section 5361, which says "no provision of this subchapter shall be construed as altering, limiting, or extending any Federal or State law or Tribal-State compact prohibiting, permitting, or regulating gambling within the United States." 31 U.S.C. § 5361(b). This argument fails because, as explained above, Plaintiffs have not identified any Tribal-State compact provision regulating gambling which the UIGEA, as applied here, alters, limits, or extends.

Plaintiffs then cite UIGEA Section 5362(10)(C), claiming it is a "'carve-out' exempting IGRA transactions." (Dkt. No. 56 at 5.) Section 5362(10)(C) exempts "intratribal transactions" from the definition of "bet or wager." 31 U.S.C. § 5362(10)(C). An "intratribal transaction" must satisfy four requirements, one of which is a bet or wager "initiated and received or otherwise made exclusively … within the Indian lands of a single Indian tribe." 31 U.S.C. § 5362(10)(C)(i)(I). But

10

Kalshi's contracts do not satisfy this requirement because they are hosted on a nationwide exchange, *i.e.*, Plaintiffs have not established the event contracts are "made exclusively" within one Tribe's lands. As a result, Kalshi's contracts fall within the UIGEA's exemption for transactions regulated under the Commodity Exchange Act. 31 U.S.C. §§ 5362(1)(E)(i), (iv)(I).

Next, Plaintiffs cite a statement by a co-author of an amendment to the Commodity Exchange Act, which consists of three sentences that do not mention IGRA. (Dkt. No. 56 at 5.) "[T]he text of a law controls over purported legislative intentions unmoored from any statutory text." *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 142 (2022).

Finally, and in the alternative, Plaintiffs argue Kalshi's event contracts are unlawful under the Commodity Exchange Act for two reasons and therefore constitute illegal internet gambling under the UIGEA. First, Kalshi's self-certification submission to the Commodities Futures Trading Commission ("the Commission") was inadequate because it did not sufficiently address the event contracts' legality. Relatedly, Kalshi's event contracts are presumptively unlawful under the Commodity Exchange Act's special rule for event contracts that involve gaming. Both arguments fail to persuade.

The Commodity Exchange Act provides the Commission with "exclusive jurisdiction" to regulate commodities and futures on Commission-designated exchanges. 7 U.S.C. § 2(a)(1)(A). An entity that lists contracts on a Commodity Futures Trading Commission exchange is a "designated contract maker"; to become one, an entity like Kalshi must apply to the Commission. 7 U.S.C. §§ 2(e), 7(a); 17 C.F.R. §§ 38.1, 38.3(a). Plaintiffs do not dispute Kalshi is a designated contract maker. (Dkt. No. 35 at 11.)

Before listing a contract on a Commodity Futures Trading Commission exchange, a designated contract maker must do one of two things. First, the designated contract maker can request and receive approval from the Commission. 17 C.F.R. § 40.3. Alternatively, the designated contract maker can self-certify its contracts are lawful, which entails providing a submission to the Commission, and immediately begin offering the contracts. 17 C.F.R. §§ 40.2(a), (c). Kalshi self-certified the sports contracts at issue here as event contracts, (Dkt. No. 35 at 14; Dkt. No. 44 at 17), which the Commodity Exchange Act defines as "agreements, contracts,

11

transactions or swaps ... that are based upon the occurrence, extent of an occurrence, or contingency." 7 U.S.C. § 7a-2(c)(5)(C)(i). The Act has a "special rule for review and approval of event contracts" wherein the Commission "may determine" the event contracts "are contrary to the public interest" if they "involve" certain activity, including "gaming." *Id.* § 7a-2(c)(5)(C)(i)(V).

In light of this framework, Plaintiffs have not shown the Court has jurisdiction to decide whether Kalshi's event contracts violate the Commodity Exchange Act. That decision belongs to the Commodity Futures Trading Commission, which has "exclusive jurisdiction" over its contract markets. 7 U.S.C. §§ 2(a)(1)(A), (C)(ii). Plaintiffs point to no applicable exception.[3] Additionally, while Plaintiffs argue the event contracts are presumptively unlawful under the Act, "presumption" and any variation of that word are absent from the Commodity Exchange Act, its special rule for event contracts, or Commission regulations for self-certification. 7 U.S.C. § 7a-2(c)(5)(C)(i)(V); 17 C.F.R. § 40.2. The Commodity Exchange Act's special rule provides "the Commission may determine" event contracts are "contrary to the public interest." 7 U.S.C. § 7a-2(c)(5)(C)(i). Congress did not say courts could so determine or that the Commission must make a presumption. Rather, the only enforcement mechanism belongs to the Commission, which "may determine" that an event contract "be subject to a 90-day review" period during which the contract listing is suspended pending a final determination. 17 C.F.R. § 40.11(c). "To the extent the States or other interested parties object to Kalshi offering sports ... event contracts, they must take that up with the [Commodity Futures Trading Commission] and Congress. Such policy issues are beyond the jurisdiction of this court." *Hendrick*, 2025 WL 1073495 at *8.

As a final note, the Court does not take lightly Plaintiffs' concerns about the effects Kalshi's activities might have on tribal sovereignty and the Tribes' finances. Indeed, by self-certifying the legality of its event contracts in way that insulates its activities from judicial review,

---

[3] After the hearing, Plaintiffs filed a "notice of supplemental authority," attaching *N. Am. Derivatives Exch., Inc. v. Nev. On Rel. of the Nevada Gaming Control Bd.*, 2025 WL 2916151 (D. Nev. Oct. 14, 2025). (Dkt. No. 65.) The Court will not consider that opinion's statutory interpretation analysis for purposes of the preliminary injunction motion because the parties did not raise it in their briefing, and Plaintiffs attached the supplemental material after the hearing on this motion, in violation of the Northern District of California's local rules. *See* Civil L.R. 7-3(d)(2). Plaintiffs are free to brief this argument in relation to Defendants' pending motions to dismiss.

12

Kalshi may have found a way around prohibitions on interstate gambling that were created with the Tribes' best interest in mind. But, on the record currently before the Court, and in light of the Commodity Exchange Act's self-certification process, Plaintiffs have not met their burden of showing a likelihood of success on their IGRA claim.

## CONCLUSION

For the reasons set forth above, Plaintiffs have not shown a likelihood of success on the merits of its claims under the Lanham Act and the Indian Gaming Regulation Act. Accordingly, Plaintiffs' motion for a preliminary injunction is DENIED.

This Order disposes of Docket No. 35.

**IT IS SO ORDERED.**

Dated: November 10, 2025

JACQUELINE SCOTT CORLEY
United States District Judge

13