

**WILL HAVEMANN**
*Partner*
1101 New York Ave., N.W.  |  Washington, DC 20005
T: +1 (202) 835-7518
whavemann@milbank.com  |  milbank.com

December 2, 2025

**By Electronic Filing**

Patricia S. Dodszuweit
Clerk of Court
U.S. Court of Appeals for the Third Circuit
21400 United States Courthouse
601 Market Street
Philadelphia, PA 19106-1790

      Re:    ***KalshiEX LLC v. Mary Jo Flaherty, et al.*, No. 25-1922**
             **FRAP 28(j) Letter Response**

Dear Ms. Dodszuweit:

    *Hendrick* supports the district court's conclusion that the CFTC's exclusive jurisdiction preempts states from regulating swaps traded on DCMs. Its additional holding—that sports-event contracts are not swaps—rests on numerous errors.

- *Hendrick* (Op.11) adopts *Nadex*'s flawed holding that an "outcome" cannot be an "event" or "contingency." This extratextual position is contradicted by the CFTC. *See* 89 Fed. Reg. 48,968, 48,969 (June 10, 2024) ("event contracts are" a type of derivative "based on the outcome of an underlying occurrence or event"). It is also contradicted by dictionaries. *See, e.g.*, *Event*, Random House Webster's Unabridged Dictionary (2d ed. 2001) ("the outcome, issue, or result of anything"); *Contingency*, Merriam-Webster's Collegiate Dictionary (11th ed. 2003) ("something liable to happen as an adjunct to or result of something else"); *see* ECF No. 85. And it is irreconcilable with state gambling laws. *E.g.*, NRS § 463.0193 (defining wagers on "sporting events" to include wagers on outcomes).

- The CEA requires a swap's underlying event only to be "associated with" potential financial consequences, not "inherently joined or connected" to them. 7 U.S.C. § 1a(47)(A)(ii). *Hendrick*'s extratextual gloss creates intractable line-drawing problems, as there is no principled way to determine when an event's connection to financial consequences is sufficiently "inherent[]" to qualify. Op.13.

MILBANK LLP

NEW YORK | LOS ANGELES | WASHINGTON, D.C. | SÃO PAULO | FRANKFURT
LONDON | MUNICH | HONG KONG | SEOUL | SINGAPORE | TOKYO

- Many quintessential swaps are based on events that are not *inherently* joined with financial consequences. Weather derivatives, for example, are not based on inherently financial events, but on weather events like the average daily temperature in a city.

- Giving effect to the plain meaning of the definition of "swap" does not "criminalize all sports betting" off DCMs, as Defendants assert. The CEA preserves the jurisdiction of state "regulatory authorities" over off-DCM transactions. 7 U.S.C. § 2(a)(1)(A); *see id.* § 16(e)(1) (no preemption with respect to transactions "not conducted on" DCMs). Sports bets differ from sports-event contracts because they are not traded on an organized open market and are subject to state gambling laws. The CFTC distinguishes insurance contracts from swaps on similar grounds—*i.e.*, they are "not traded" and are "regulated as insurance under applicable state law." 77 Fed. Reg. 48208, 48212-13 (Aug. 13, 2012).

Respectfully submitted,

/s/ William E. Havemann
William E. Havemann

*Counsel for Appellee KalshiEX LLC*

cc:   All Counsel (via ECF)
      Word Count: 350