

*State of New Jersey*

| | | |
|---|---|---|
| **MIKIE SHERRILL** *Governor* | OFFICE OF THE ATTORNEY GENERAL DEPARTMENT OF LAW AND PUBLIC SAFETY OFFICE OF THE SOLICITOR GENERAL PO BOX 080 TRENTON, NJ 08625-0080 | JENNIFER DAVENPORT *Acting Attorney General* |
| **DR. DALE G. CALDWELL** *Lt. Governor* | | JEREMY M. FEIGENBAUM *Solicitor General* |

February 24, 2026

**VIA ECF**

Patricia S. Dodszuweit, Clerk of Court
U.S. Court of Appeals for the Third Circuit
21400 United States Courthouse
601 Market Street
Philadelphia, PA 19106-1790

    Re: ***KalshiEX LLC v. Mary Jo Flaherty, et al.***, No. 25-1922
          FRAP 28(j) Response

Dear Ms. Dodszuweit:

*KalshiEX LLC v. Orgel*, 3:26-cv-34 (M.D. Tenn. Feb. 19, 2026), is incorrect and inapposite.

*Orgel* errs in holding that Kalshi's sports-wagering event contracts are "swaps" because sports game–related outcomes are "associated with" a potential financial consequence, even one that does not occur "right away." Op.17. Under that construction, it is hard to imagine anything that would *not* be a swap, as everything has *some* financial consequence, "even if not right away." *Id.* That unreasonable interpretation "knows no limiting principle." ECF.88.

*Orgel*'s holding that Tennessee's sports-wagering laws conflict with the Commodity Exchange Act is also wrong and irrelevant. The court's interpretation



of Tennessee law as requiring Kalshi to "create a Tennessee-only exchange," Op.19, does not apply even if correct. New Jersey's laws are limited to its borders and have no effect on Kalshi's conduct nationwide. Reply 25. Nor do state sports-wagering laws violate the CFTC's impartiality requirement, Op.19, which prevents "discriminatory access requirements," but not "different categories of market participants." Reply 25–26. Nor did the court justify the impact of its decision on in-state casinos, which now violate federal law.

State sports-wagering laws also are not an obstacle to the Act's objective of uniform regulation. Op.20. Conflict preemption rests not on an abstract interest in uniformity but on the federal statute's "text and structure." Reply 22. And here, through the Dodd-Frank amendments, Congress specifically sought to *prohibit* sports-wagering event contracts. Appellants' Br.48–49. Regardless, requiring Kalshi to comply with state laws does not "frustrate[] Congress's purpose in consolidating regulatory power in the CFTC." ECF.91; *accord KalshiEX LLC v. Martin*, 793 F.Supp.3d 667, 686 (D. Md. 2025). And more broadly, Congress has always *deferred* to state gambling regulation, not superseded it. Appellants' Br.28–30. So it makes little sense to speak of a uniform sports betting market when, *e.g.*, the Wire Act criminalizes interstate transmission of sports wagers except where legal under state law. 18 U.S.C. § 1084(a)–(b). Kalshi cannot overcome the presumption against preemption by showing that, contrary to its century-long approach, Congress meant to take gambling regulation away from the States and give it to the CFTC.

Respectfully submitted,

JENNIFER DAVENPORT
ACTING ATTORNEY GENERAL OF NEW JERSEY

By:   */s/ Liza B. Fleming*
      Liza B. Fleming
      Deputy Attorney General

cc: All counsel (via ECF)
Word Count: 350

