

**MIKIE SHERRILL**
*Governor*

**DR. DALE G. CALDWELL**
*Lt. Governor*

*State of New Jersey*
OFFICE OF THE ATTORNEY GENERAL
DEPARTMENT OF LAW AND PUBLIC SAFETY
OFFICE OF THE SOLICITOR GENERAL
PO BOX 080
TRENTON, NJ  08625-0080

**JENNIFER DAVENPORT**
*Acting Attorney General*

**JEREMY M. FEIGENBAUM**
*Solicitor General*

February 24, 2026

**VIA ECF**

Patricia S. Dodszuweit, Clerk of Court
U.S. Court of Appeals for the Third Circuit
21400 United States Courthouse
601 Market Street
Philadelphia, PA 19106-1790

> Re: ***KalshiEX LLC v. Mary Jo Flaherty, et al.***, No. 25-1922
> **FRAP 28(j) Letter**

Dear Ms. Dodszuweit:

Appellants advise of *Learning Resources v. Trump*, No. 24-1287, 2026 WL 477534 (U.S. Feb. 20, 2026), which rejected the Federal Government's argument that two words in the International Emergency Economic Powers Act (IEEPA)— "regulate" and "importation"—gave the President tariff power. *Id.* at *6.

Three justices invoked the major questions doctrine to reject the Federal Government's "claim" that it has "broad, expansive power" based on "statutory text" that "might '[a]s a matter of definitional possibilities' have been read to delegate the asserted power," but where "'context' counseled 'skepticism.'" *Id.* at *7 (quoting *West Virginia v. EPA*, 597 U.S. 697, 721, 732 (2022)). Reading IEEPA to delegate tariff power "would replace the longstanding executive-legislative collaboration over trade policy with unchecked Presidential policymaking." *Id.* at *8.



But "Congress seldom effects such sea changes through 'vague language,'" particularly ones of "astonishing" "economic and political consequences." *Id.* at *8–9. Such an "extraordinary assertion of power" requires "clear congressional authorization," not broad and unspecific text. *Id.* at *10. Even the three concurring justices agreed "whether Congress ever has before, or likely would, delegate" the asserted power is relevant. *Id.* at *37. Three dissenting justices disagreed the major questions doctrine applies in foreign-policy contexts, but did not dispute these principles generally.

That same reasoning forecloses Kalshi's sweeping construction of the Commodity Exchange Act. Congress did not grant the CFTC broad, expansive authority to regulate sports wagering by inserting one word—"swaps"—into the Act. Appellants' Br.20–22. Such a sweeping grant of authority is even more unlikely considering the historical backdrop of federal gambling laws stretching back to the 1940s, which shows Congress believes gambling (including sports gambling) is a matter "of vast economic and political significance." Appellants' Br.21. And the economic consequences of sports gambling are "astonishing"—having brought in $13.78 billion nationwide in 2024. *Id.* Like the two words in IEEPA, the single word "swap" added to the Act in 2010 "cannot bear the weight" that Kalshi places on it, *Learning Resources*, 2026 WL 477534, at *12, and cannot justify such an "extraordinary assertion of the power" by the CFTC, *id.* at *10.

Respectfully submitted,

JENNIFER DAVENPORT
ACTING ATTORNEY GENERAL OF NEW JERSEY

By:  /s/ Liza B. Fleming
     Liza B. Fleming
     Deputy Attorney General

cc:  All counsel (via ECF)
Word Count: 350

