

# Milbank

**WILL HAVEMANN**
*Partner*
1101 New York Ave., N.W.  |  Washington, DC 20005
T: +1 (202) 835-7518
whavemann@milbank.com  |  milbank.com

March 17, 2026

**By Electronic Filing**

Patricia S. Dodszuweit
Clerk of Court
U.S. Court of Appeals for the Third Circuit
21400 United States Courthouse
601 Market Street
Philadelphia, PA 19106-1790

> **Re:** ***KalshiEX LLC v. Mary Jo Flaherty, et al.***, No. 25-1922
> **FRAP 28(j) Letter Response**

Dear Ms. Dodszuweit:

*Nessel* and *Schuler* do not support reversal.  Both cases interpret the CEA's "swap" definition to require an event with an "inherent" connection to financial consequences.  *Nessel*, Op.6; *Schuler*, Op.11.  That contradicts the CEA's text, which requires an event associated with "*potential*" financial consequences.  7 U.S.C. § 1a(47)(A)(ii).  *Schuler* further maintains that a qualifying event must "traditionally and directly *affect commodity prices*."  *Schuler*, Op.11-12.  But the definition does not reference commodity prices at all.  Even if it did, the CEA defines commodity to include an "occurrence" or "contingency."  7 U.S.C. § 1a(19)(iv).

*Nessel* and *Schuler*'s extratextual limits contravene Congress's clear intent to define "swap" broadly.  *See* 7 U.S.C. § 1a(47)(A)(iv) (separately defining swap to include any agreement "that is, or in the future becomes, commonly known to the trade as a swap").  Congress further enumerated exclusions from the definition, *id.* § 1a(47)(B), and authorized the CFTC and SEC to "further define" "swap" by regulation, 15 U.S.C. § 8302(d)(1), underscoring that it did not want courts to add limitations of their own.  And Congress specifically contemplated "event contract[s]" involving "gaming," and gave the CFTC discretion to prohibit them rather than defining them out of the term "swap," *see* 7 U.S.C. § 7a-2(c)(5)(C)(i).  Nor is a limiting construction needed to avoid forcing "all sports bets" onto DCMs.  *Schuler*, Op.12.  The CFTC has recognized non-tradable transactions like sports bets are not derivatives and thus need not be traded on DCMs.  77 Fed. Reg. 48,208, 48,212-13 (Aug. 13, 2012).

*Schuler* also rejected field preemption, but it implicitly recognized the CEA's "preemptive effect" applies to Kalshi's contracts if they are "swaps and futures traded on DCMs."  *Schuler*,

MILBANK LLP

NEW YORK | LOS ANGELES | WASHINGTON, D.C. | SÃO PAULO | FRANKFURT
LONDON | MUNICH | HONG KONG | SEOUL | SINGAPORE | TOKYO

Op.17.  As to conflict preemption, *Schuler* rejected as "*ipse dixit*" Kalshi's argument that complying with state-by-state geographic restrictions would violate Kalshi's "impartial access" obligation.  *Schuler*, Op.20; *see* 17 C.F.R. § 38.151(b).  But the CFTC itself has expressly endorsed Kalshi's view.  CFTC Br.27.

Finally, *Nessel* was an *ex parte* TRO decision, not a preliminary injunction decision.  The court accordingly recognized that "further argument and investigation" was merited.  *Nessel*, Op.7.  *Nessel*'s preliminary conclusions merit minimal weight.

Respectfully submitted,

/s/ *William E. Havemann*
William E. Havemann

*Counsel for Appellee KalshiEX LLC*

cc:     All Counsel (via ECF)
        Word Count: 345