

*State of New Jersey*
OFFICE OF THE ATTORNEY GENERAL
DEPARTMENT OF LAW AND PUBLIC SAFETY
OFFICE OF THE SOLICITOR GENERAL
PO BOX 080
TRENTON, NJ 08625-0080

MIKIE SHERRILL
*Governor*

DR. DALE G. CALDWELL
*Lt. Governor*

JENNIFER DAVENPORT
*Attorney General*

JEREMY M. FEIGENBAUM
*Solicitor General*

March 24, 2026

## VIA ECF

Patricia S. Dodszuweit, Clerk of Court
U.S. Court of Appeals for the Third Circuit
21400 United States Courthouse
601 Market Street
Philadelphia, PA 19106-1790

> Re: ***KalshiEX LLC v. Mary Jo Flaherty, et al.***, No. 25-1922
> **FRAP 28(j) Letter**

Dear Ms. Dodszuweit:

Appellants advise of *Nevada ex rel. Nevada Gaming Control Board v. KalshiEX, LLC*, 26-OC-00050-1B (Nev. Dist. Ct. Mar. 20, 2026), which issued a TRO prohibiting Kalshi from offering sports-, election-, and entertainment-related event contracts in Nevada.

In doing so, the court rejected Kalshi's argument that Nevada gaming laws are preempted by the Commodity Exchange Act as applied to these event contracts traded on federally-regulated exchanges. Op.3. The court instead concluded that "based on the current state of the law," the Act "does not vest exclusive jurisdiction over Kalshi event contracts with the CFTC." Op.4. Accordingly, "Nevada law is not preempted" and can be enforced against Kalshi. Op.4. The court's decision therefore adds to the growing body of caselaw holding that the Act does



not preempt state gaming regulations. *See KalshiEX LLC v. Martin*, 793 F.Supp.3d 667 (D. Md. 2025); *NADEX v. Nevada Gaming Control Board*, --- F.Supp.3d.---, 2025 WL 2916151 (D. Nev. Oct. 14, 2025); *KalshiEx v. Hendrick*, ---F.Supp.3d.---, 2025 WL 3286282 (D. Nev. Nov. 25, 2025); *Massachusetts v. KalshiEx, LLC*, 2584CV02525, 2026 WL 188019 (Mass. Super. Ct. Jan. 20, 2026); *KalshiEX, LLC v. Schuler*, 25-cv-1165, 2026 WL 657004 (S.D. Ohio Mar. 9, 2026); *QCX LLC v. Nessel*, 26-cv-710 (W.D. Mich., Mar. 10, 2026).

Moreover, the decision undermines any claim that it is impossible for Kalshi to comply with state gaming regulations. Although Kalshi argued it would be "impossible for [it] to comply with these state-by-state requirements while running a national exchange," Appellee's Br.33, Kalshi evidently quickly complied with the Nevada injunction by ceasing to offer sports-, election-, and entertainment-related event contracts to Nevada citizens. *See* Geoff Zochodne, *Kalshi Shuts Down Sports Trading in Nevada After Legal Loss*, Yahoo! finance (Mar. 22, 2026), https://tinyurl.com/dv9sysn4. In any event, it would be unnecessary for Kalshi to cease offering sports-event contracts in New Jersey provided Kalshi obtains a license and complies with New Jersey's laws. *See* Appellants' Br. 24–25.

This decision further confirms that the Act does not preempt longstanding state gambling laws and that Kalshi can comply with state gaming regulations as applied to its sports-event contracts.

Respectfully submitted,

JENNIFER DAVENPORT
ATTORNEY GENERAL OF NEW JERSEY

By:    */s/ Liza B. Fleming*
      Liza B. Fleming
      Deputy Attorney General

cc:  All counsel (via ECF)
Word Count: 349



REC'D & FILED

2026 MAR 20 AM 8: 39

WILLIAM SCOTT HOEN
CLERK
BY _____
DEPUTY

# IN THE FIRST JUDICIAL DISTRICT COURT OF
# THE STATE OF NEVADA IN AND FOR CARSON CITY

STATE OF NEVADA ex rel. NEVADA
GAMING CONTROL BOARD,

    Plaintiff,

vs.

KALSHIEX, LLC,

    Defendant.

Case No. 26 0C 00050 1B

Dept. No. I

## ORDER GRANTING PLAINTIFF'S APPLICATION FOR *EX PARTE* TEMPORARY RESTRAINING ORDER

This matter is before the Court on the *Complaint for Permanent Injunction and Declaratory Relief* ("*Complaint*") and the associated *Renewed Ex Parte Application for Temporary Restraining Order and Motion for Preliminary Injunction* ("*Application*") filed by the Plaintiff, STATE OF NEVADA ex rel. NEVADA GAMING CONTROL BOARD's ("BOARD") on March 12, 2026.  On March 13, 2026, Defendant, KALSHIEX, LLC, ("KALSHI") filed its *Kalshiex's Preliminary Opposition to Plaintiff's Ex Parte Application for Immediate Temporary Restraining Order and Motion for Preliminary Injunction* ("*Preliminary Opposition*").

The Court, having reviewed the *Complaint*,  *Application* and *Preliminary Opposition* hereby concludes as follows:

The BOARD seeks to restrain and enjoin KALSHI and any of its agents, employees, officers, or affiliates from operating a derivatives exchange and prediction market which offers event-based contracts relating to sports-, election-, and entertainment-related events to people within Nevada without obtaining

all required Nevada gaming licenses, and from allowing its market to allow access by persons under the age of 21.

A temporary restraining order or a preliminary injunction may be issued pursuant to NRCP 65. Under Nevada law, a temporary restraining order is authorized when it "appear[s] by the complaint that the plaintiff is entitled to the relief demanded"; the relief involves "restraining the commission or continuance of the act complained of"; and when continuance of the act "would produce great or irreparable injury to the plaintiff." NRS 33.010; *Posner v. U.S. Bank N.A.*, 140 Nev. Adv. Op. 22, 545 P.3d 1150, 1152 (2024) (holding injunctive relief is "'proper where the moving party can demonstrate that it has a reasonable likelihood of success on the merits and that, absent [such relief], it will suffer irreparable harm for which compensatory damages would not suffice.'" (internal citation omitted)).

In addition, the balance of hardships and public interest may be considered in determining whether injunctive relief is warranted and, if so, the scope and nature of that relief. *University & Cmty. College Sys. of Nev. v. Nevadans for Sound Gov't*, 120 Nev. 712, 721, 100 P.3d 179, 187 (2004).

**I.    The BOARD is reasonably likely to prevail on the merits.**

The *Complaint, Application,* and *Declaration of Jessica E. Whelan in support of Plaintiff's Application for Ex Parte Temporary Restraining Order* ("*Declaration*") satisfy the requirements of NRCP 65(b)(l) for issuance of the requested temporary restraining order without notice. As a threshold matter, the BOARD has a "reasonable likelihood of success on the merits."

First, the *Complaint* establishes that gaming in Nevada is expansively and strictly regulated. The BOARD, in conjunction with the Nevada Gaming Commission, has virtually comprehensive statutory authority over gaming in Nevada. *See generally* NRS Ch. 463 *et seq.* The strict regulation of gaming promotes the public interest in several respects, including the prevention of underage gambling, preservation of the integrity of the events which are the subject of gaming wagers, and exclusion of unsuitable individuals from gaming activities. NRS 463.166, .350, Nev. Gam'g Comm. Reg. 22.1205(2). Gaming in Nevada may only be conducted by an entity licensed under the authority of the Nevada Gaming Control Act. NRS 463.160.

Second, "gaming" as used in Nevada law includes a "percentage game," and a "wager" in a "sports pool." NRS 493.0152, .0193, .01962. "Percentage games are . . . games where patrons wager

against each other and the house takes a percentage of each wager as a 'rake-off.'" *Hughes Props. v. State*, 100 Nev. 295, 297, 680 P.2d 970, 971 (1984). A "wager" is "a sum of money or representative of value that is risked on an occurrence for which the outcome is uncertain." NRS 463.01962. And a "sports pool" is "the business of accepting wagers on sporting events or other events by any system or method of wagering." NRS 463.0193.

Third, the record at this early stage in the proceedings indicates KALSHI is not licensed under the Nevada Gaming Control Act.

Fourth, the record at this early stage in the proceedings indicates KALSHI offers "event-based contracts" that relate to sports-, election-, and entertainment-related events, including college basketball games, college and professional football games and elections. Under Nevada law, this conduct constitutes the operation of a "sports pool" as it involves the acceptance of "wagers" concerning "sporting events or other events" "for which the outcome is uncertain." Further, the record indicates KALSHI takes a commission on contracts purchased through its system, meaning it is operating a "percentage game" as defined in Nevada law.

Finally, the Court has considered KALSHI's assertions in its *Preliminary Opposition* that it is an exchanged registered with the Commodity Futures Trade Commission ("CFTC") in accordance with the Commodity Exchange Act ("CEA"); that Nevada gaming laws are preempted with respect to the event contracts offered on a federally regulated exchange; and that the CEA grants the CFTC exclusive jurisdiction to regulate "transactions involving swaps traded or executed on a [federally designated] contract market." 7 U.S.C. §2(a)(1)(A).

The question of federal preemption in this regard is nuanced and rapidly evolving. At the moment, the balance of convincing legal authority weighs against federal preemption in this context. *See KalshiEx, LLC v. Hendrick*, No. 2:25-cv-00575-APG-BNW, 2025 U.S. Dist. LEXIS 234246 at *11–38 (D. Nev. Nov. 24, 2025) [hereinafter referred to as "*KalshiEx*"]; *see also North American Derivatives Ex., Inc. v. Nev. Gaming Control Bd.*, No. 2:25-cv-00978-APG-BNW, 2025 U.S. Dist. LEXIS 466366 (D. Nev. Oct. 14, 2025) (holding contracts based on outcome of sporting events are not "swaps" under the CEA and are not subject to exclusive jurisdiction of CFTC) [hereinafter referred to as "*North American Derivatives*"]; *KalshiEx, LLC v. Martin*, No. 25-cv-1283-ABA, 793 F. Supp. 3d 667, 2025 U.S. Dist.

LEXIS 147815 (D. Md. Aug. 1, 2025) (holding state law not preempted by CEA as applied to sports-related event contracts); *Massachusetts v. KalshiEX, LLC*, No. 2584CV02525, 2026 WL 188019 (Super. Ct. Suffolk Cnty., Mass. Jan. 20, 2026) (same). *But see KalshiEx, LLC v. Flaherty*, No. 25-cv-02152-ESK-MJS, 2025 U.S. Dist. LEXIS 79893 (D.N.J. April 28, 2025) (holding state law preempted by Commodity Exchange Act as applied to sports-related event contracts); *KalshiEX LLC v. Orgel*, No. 26-cv-00034, 2025 U.S. Dist. LEXIS 33927 (M.D. Tenn. Feb. 19, 2026) (same).[1]

*North American Derivatives* is the most thorough judicial explanation of the BOARD'S position: That KALSHI's event-based contracts at issue are not "swaps" subject to the exclusive jurisdiction of the CFTC. *Orgel* is the most thorough judicial explanation of the contrary position advocated by KALSHI. Having reviewed each of these authorities, this Court finds the analysis and explanation in *North American Derivatives* better reasoned and more persuasive than *Orgel*. Therefore, this Court concludes that based on the current state of the law, the CEA, more specifically 7 U.S.C. §2(a)(l)(A), fairly interpreted, does not vest exclusive jurisdiction over KALSHI event contracts with the CFTC. As such, Nevada law is not preempted, and the BOARD has authority to prosecute the enforcement action presented by the *Complaint* and the *Application*.

## II.  The BOARD's injuries are irreparable and non-compensable.

If KALSHI's acts are wrongful, the resulting harm to Nevada's "comprehensive regulatory structure" and "strict licensing standards" is immediate, irreparable and not sufficiently remediable by compensatory damages. The BOARD has a statutory duty to protect the public and advance Nevada's substantial interest in administering a reputable gaming industry with fairness and integrity. In furtherance of that duty, the BOARD is obliged to consistently and equitably monitor and enforce regulatory and statutory compliance among all industry participants and protect the health, safety, morals, good order, and general welfare of gaming consumers. An unlicensed participant beyond the BOARD's control, such as KALSHI, obstructs the BOARD's ability to fulfill its statutory functions. For example, the BOARD lacks authority to ensure that wagers are not being accepted by KALSHI from owners, coaches, players officials or other individuals who are in a position to influence the outcome of a sporting

---

[1]  Notably, the New Jersey federal district court relied primarily on the reasoning of the Nevada federal district court in *KalshiEx* in that court's initial grant of KALSHI's motion for preliminary injunction—an injunction that was later dissolved. *See generally Flaherty*, 2025 U.S. Dist. LEXIS 79893.

event or other subject of an event-based contract. The BOARD also has no means to ensure that underage individuals are not allowed to purchase KALSHI's contracts and no ability to enforce any sanction against KALSHI if it determined this to be the case. Additionally, the BOARD has no way to prevent unsuitable individuals from engaging in KALSHI's activities in Nevada. By their nature, these cannot be mitigated, much less restored, by compensatory damages after the injury is incurred.

These potential consequences must be characterized as irreparable under Nevada law. As such, they support issuance of a temporary restraining order.

**III.    The *Declaration* establishes that immediate and irreparable injury will result if KALSHI is allowed a full opportunity to respond before the temporary restraining order is issued.**

As the *Declaration* and the record establish, KALSHI has been provided notice of the BOARD's filings as well as the actual filings themselves. The BOARD has preliminarily substantiated the imminence of its injuries. Further, they are the types of injuries that exacerbate with each day that KALSHI operates in Nevada outside the authority of the BOARD. A day means more consumers. More consumers mean more transactions. More transactions means more potential harm to the BOARD. As such, every day matters in this case in a literal sense. For these reasons, this Court deems immediate action to be necessary and issues the temporary restraining order in advance of KALSHI providing a comprehensive response.

**IV.    The balance of hardships and public interest weigh in favor of issuing the temporary restraining order.**

Largely for the reasons that have already been explained, the balance of hardships and public interest in maintaining meaningful control over Nevada's gaming industry for the purpose of ensuring its integrity strongly supports issuance of the temporary restraining order. Beyond the factors previously addressed, if it is later determined that the temporary restraining order was issued wrongfully, KALSHI would have been denied a brief period in the market which damaged them in an amount that should be relatively straightforward to quantify and, if legally redressable, compensate. There is no reciprocal remedy for the BOARD if the temporary restraining order is wrongfully denied.

## V.    No security is required.

A party who is the beneficiary of a temporary restraining order is typically required to post security for damages resulting from wrongful issuance of the temporary restraining order. NRCP 65(c). However, the BOARD, as an agency of the State of Nevada, is exempted from that typical requirement. *Id.* Therefore, no security will be required.

## VI.    The duration of the temporary restraining order is limited to 14 days.

NRCP 65(b)(2) limits the duration of a temporary restraining order without notice to a maximum of 14 days unless it is extended for good cause or the adverse party consents to a longer period. There is no request to extend the deadline nor has KALSHI consented to a longer period, so the duration of the TRO is 14 days from the date of this Order.

Therefore, good cause appearing,

**IT IS HEREBY ORDERED** that *Plaintiff's Renewed Ex Parte Application for Temporary Restraining Order and Motion for Preliminary Injunction* filed on March 12, 2026 is **GRANTED** insofar as it requests issuance of a temporary restraining order to prohibit KALSHI from offering or facilitating the offering of sports-, election-, and entertainment-related event contracts in Nevada and from allowing its market to accept wagers on those events from persons under the age of 21 in Nevada.

**IT IS HEREBY FURTHER ORDERED** that a hearing on *Plaintiff's Renewed Ex Parte Application for Temporary Restraining Order and Motion for Preliminary Injunction* filed March 12, 2026 will be held in the First Judicial District Court, located at 885 East Musser Street, Carson City, Nevada, Department I, on April 3, 2026, at 1:30 p.m.

**IT IS HEREBY FURTHER ORDERED** that the BOARD will serve a notice of entry of the order on KALSHI and file proof of such service within 7 days after the date the court sent the order to the attorney.

Signed this 20th day of March, 2026.

JASON D. WOODBURY
DISTRICT COURT JUDGE

# CERTIFICATE OF MAILING

Pursuant to NRCP 5(b), I certify that I am an employee of the First Judicial District Court, and that on this _10_ day of March, 2026, I deposited for mailing at Carson City, Nevada, a true and correct copy of the foregoing Order addressed as follows:

Jessica E. Whelan
Sabrena K. Clinton
John S. Michela
STATE OF NEVADA
OFFICE OF THE ATTORNEY
GENERAL
1 State of Nevada Way, Suite 100
Las Vegas, NV  89119

Grant R. Mainland
Matthew LaRoche
Andrew L. Porter
Nicole Valente
MILLBANK LLP
55 Hudson Yards
New York, NY  10001

Paul C. Wiliams
Dennis L. Kennedy
BAILEY KENNEDY
8984 Spanish Ridge Avenue
Las Vegas, NV  89148

Neal Kumar Katyal
Joshua B. Sterling
William E. Havemann
MILLBANK LLP
1850 K. Street, Suite 1100
Washington, D.C.  20006

John K. Gallagher
Patrick H. Gallagher
GUILD, CALLAGHER & FULLER LTD.
100 West Liberty Street
Suite 800
Reno, NV  89501

_____
Julie Harkleroad
Judicial Assistant, Dept. 1

3